IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BLUE CROSS BLUE SHIELD OF MICHIGAN, a nonprofit mutual insurance company | ) ) ) ) |
| | ) Case No. 2:21-cv-10076 |
| Plaintiff, | ) ) Hon. Denise Page Hood |
| | ) Hon. Mag. Kimberly G. Altman |
| v. | ) |
| | ) **ORAL ARGUMENT** |
| BOND PHARMACY, INC., D/B/A ADVANCED INFUSION SOLUTIONS, a Mississippi corporation, | ) **REQUESTED** ) ) ) ) |
| | ) |
| Defendant. | ) |

## **DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

For the reasons set forth in the attached brief, Defendant Bond Pharmacy, Inc., d/b/a Advanced Infusion Solutions ("AIS"), hereby moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Counts I, II, and III of Plaintiff Blue Cross Blue Shield of Michigan's ("BCBSMI's") Amended Complaint. Pursuant to Local Rule 7.1, on December 1, 2022, counsel for AIS contacted BCBSMI's counsel requesting concurrence in the relief sought in this motion, and concurrence was not reached.

Dated:  December 7, 2022

Respectfully submitted,

HONIGMAN LLP
*Attorneys for Defendant*

By:  /s/ I.W. Winsten
I. W. Winsten (P30528)
HONIGMAN LLP
660 Woodward, Ste. 2290
Detroit, MI  48226
Telephone:  (313) 465-7608
iww@honigman.com

Paul Werner
Imad Matini
Amanda Witt
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave. NW, Ste. 100
Washington, D.C.  20006
Telephone:  (202) 747-1931
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
awitt@sheppardmullin.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| BLUE CROSS BLUE SHIELD OF MICHIGAN, a nonprofit mutual insurance company, | ) ) ) ) Case No. 2:21-cv-10076 |
| Plaintiff, | ) Hon. Denise Page Hood ) Hon. Mag. Kimberly G. Altman |
| v. | ) |
| BOND PHARMACY, INC., D/B/A ADVANCED INFUSION SOLUTIONS, a Mississippi corporation, | ) **ORAL ARGUMENT** ) **REQUESTED** ) ) ) ) |
| Defendant. | ) |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S
AMENDED MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF ISSUES PRESENTED................................................... v

MOST APPROPRIATE AUTHORITIES .............................................. vii

INTRODUCTION .....................................................................................1

BACKGROUND ........................................................................................3

STANDARD ...............................................................................................11

ARGUMENT ..............................................................................................12

     I.     BCBSMI Cannot Allege A Viable Breach Claim...............................12

     II.    BCBSMI Cannot Allege A Viable HCFCA Claim...........................14

     III.   BCBSMI Cannot Allege A Viable Misrepresentation Claim. ............17

CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Acheampong v. Bank of N.Y. Mellon,*
  2013 WL 173472 (E.D. Mich. Jan. 16, 2013) ...................................13, 14, 15, 18

*Arrowood Indem. Co. v. Cristini,*
  630 Fed. App'x 512 (6th Cir. 2015) ....................................................................20

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
  528 F.3d 426 (6th Cir. 2008) ...............................................................................3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................12

*Bennett v. MIS Corp.,*
  607 F.3d 1076 (6th Cir. 2010) ..............................................................12, 16, 18

*Bushman v. Am. Title Co. of Washtenaw,*
  101 F. Supp. 3d 714 (E.D. Mich. 2015) .............................................................20

*Chesbrough v. VPA, P.C.,*
  655 F.3d 461 (6th Cir. 2011) ..............................................................................16

*Convergent Group Corp. v. Cnty. of Kent,*
  266 F. Supp. 2d 647 (W.D. Mich. 2003) ............................................................17

*Cruz v. Capital One, N.A.,*
  192 F. Supp. 3d 832 (E.D. Mich. 2016) .......................................................12, 18

*Cummins v. Robinson Twp.,*
  770 N.W.2d 421 (Ct. App. Mich. 2009)..............................................................20

*Edwards v. Standard Fed. Bank, N.A.,*
  2009 WL 92157 (E.D. Mich. Jan. 14, 2009) ......................................................12

*In re Flint Water Cases,*
  453 F. Supp. 3d 970 (E.D. Mich. 2020) .............................................................13

*Gregory v. CitiMortgage, Inc.,*
  890 F. Supp. 2d 791 (E.D. Mich. 2012) .......................................................18, 19

*Hendricks v. Bronson Methodist Hosp., Inc.,*
    2014 WL 3752917 (W.D. Mich. July 30, 2014)...................................................18

*Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.,*
    532 N.W.2d 541 (Ct. App. Mich. 1995).........................................................17, 18

*Lemanski v. Rev Group, Inc.,*
    2019 WL 5455416 (E.D. Mich. Oct. 24, 2019).................................................19

*MacDonald v. Thomas M. Cooley Law School,*
    724 F.3d 654 (6th Cir. 2013) .............................................................................19

*Novak v. Nationwide Mut. Ins. Co.,*
    599 N.W.2d 546 (Ct. App. Mich. 1999).............................................................19

*Randall S. Miller & Assocs., P.C. v. Pitney Bowes, Inc.,*
    2016 WL 1242356 (E.D. Mich. Mar. 30, 2016).........................................17, 18

*Riley v. Commc'ns Workers of Am.,*
    1987 WL 46347 (E.D. Mich. Nov. 18, 1987)..............................................14, 18

*Stanley v. ExpressJet Airlines, Inc.,*
    2017 WL 2462487 (E.D. Mich. June 7, 2017) ...............................................3, 12

*State ex rel. Gurganus v. CVS Caremark Corp.,*
    852 N.W.2d 103 (Mich. 2014)......................................................................16, 19

*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.,*
    842 F.3d 430 (6th Cir. 2016) .............................................................................14

*U.S. ex rel. Hutchins v. DynCorp Int'l, Inc.,*
    342 F. Supp. 3d 32 (D.D.C. 2018).....................................................................15

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.,*
    835 F. Supp. 2d 341 (E.D. Mich. 2011) ............................................................16

*U.S. ex rel. Winkler v. BAE Sys., Inc.,*
    957 F. Supp. 2d 856 (E.D. Mich. 2013) ......................................................14, 15

*U.S. ex rel. Yanity v. J & B Medical Supply Co., Inc.,*
    2012 WL 4811288 (E.D. Mich. Oct. 10, 2012).................................................15

*Universal Health Servs., Inc. v. U.S.,*
    579 U.S. 176 (2016)............................................................................................14

*Yermian v. Countrywide Home Loans, Inc.,*
    2009 WL 5150882 (E.D. Mich. Dec. 17, 2009) ................................................19

*Zaher v. Argent Mortg. Co., LLC,*
    2017 WL 193550 (E.D. Mich. Jan. 18, 2017) ..................................................12

<u>Statutes</u>

31 U.S.C. § 3729 ......................................................................................................15

M.C.L. 752.1002 ......................................................................................................15

M.C.L. 752.1009 ......................................................................................................15

Federal Rules of Civil Procedure Rule 9 .................................................................18

Federal Rules of Civil Procedure Rule 12 ...............................................................11

## **STATEMENT OF ISSUES PRESENTED**

1.      Can a Plaintiff allege a viable breach of contract claim where the Plaintiff's parent entity and affiliate have publicly admitted that Defendant's alleged conduct does not constitute a breach of the parties' agreement.

> Answer:  No.

2.      Can a Plaintiff allege a viable statutory claim under the Michigan Health Care Fraud Claims Act based on the same allegations underlying its breach of contract claim where it fails to allege fraud with particularity or any facts showing Defendant knowingly submitted false claims or claims for which Defendant knew it was not entitled to payment, and where Plaintiff's parent entity and affiliate have publicly admitted that Defendant's billing practices do not constitute fraud but are instead entirely proper.

> Answer:  No.

3.      Can a Plaintiff allege a viable common law fraudulent misrepresentation claim based solely on an alleged breach of contractual duties, where it fails to allege any particular facts demonstrating Defendant knowingly made any misrepresentations, alleges that it relied on the same alleged misrepresentations even after it became aware of them, and its parent entity and affiliate have publicly admitted that Defendant's billing practices are not fraudulent but are instead entirely proper.

Answer:  No.

## <u>MOST APPROPRIATE AUTHORITIES</u>

*Acheampong v. Bank of N.Y. Mellon*, 2013 WL 173472 (E.D. Mich. Jan. 16, 2013).

*Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015).

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010).

*Cummins v. Robinson Twp.*, 770 N.W.2d 421 (Ct. App. Mich. 2009).

*Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (Ct. App. Mich. 1995).

*Lemanski v. Rev Group, Inc.*, 2019 WL 5455416 (E.D. Mich. Oct. 24, 2019).

*MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654 (6th Cir. 2013).

*Randall S. Miller & Assocs, P.C. v. Pitney Bowes, Inc.*, 2016 WL 1242356 (E.D. Mich. Mar. 30, 2016).

*Stanley v. ExpressJet Airlines, Inc.*, 2017 WL 2462487 (E.D. Mich. June 7, 2017).

*State ex rel. Gurganus v. CVS Caremark Corp.*, 852 N.W.2d 103 (Mich. 2014).

*Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176 (2016).

*U.S. ex rel. Winkler v. BAE Sys., Inc.*, 957 F. Supp. 2d 856 (E.D. Mich. 2013).

# **INTRODUCTION**

As AIS has argued all along, BCBSMI's breach of contract and fraud claims are facially meritless.  Blue Cross Blue Shield Association ("BCBSA") – the parent entity of BCBSMI and all BCBS associations – and Blue Cross & Blue Shield of Mississippi ("BCBSMS") have now publicly confirmed this reality.   After thoroughly reviewing AIS's Code S9328 claims – the very same type of claims and code at issue here – BCBSA and BCBSMS publicly admitted that AIS properly billed its claims and that its billing practices did not constitute fraud, waste, or abuse. In the face of these admissions, BCBSMI's copycat lawsuit – purporting to challenge the very same billing practices that its parent and affiliate have now approved – is properly and swiftly dismissed for failure to state any viable claim for relief.

In 2018, BCBSMI retained AIS, a leading pharmacy and national provider of specialized home infusion therapy services, to provide home infusion therapy and related services to its members in exchange for per diem payments.  AIS therefore billed, and BCBSMI paid, per diem charges until October 2020, when BCBSMI suddenly alleged AIS had improperly billed it.  As such, BCBSMI unilaterally refused to pay millions of dollars in charges submitted by AIS and demanded repayment of $6.4 million for past claims.  Then, when AIS protested BCBSMI's actions, BCBSMI terminated the agreement and sued AIS.

After BCBSMI filed its Amended Complaint, however, AIS resolved litigation with BCBSA and BCBSMS involving the *exact same* per diem billing practices at issue in BCBSMI's Amended Complaint.  As part of that resolution, BCBSMS and BCBSA publicly admitted that AIS's billing practices fully complied with the parties' provider agreement, and thus were not fraudulent.

These public admissions, as well as established law, now require the dismissal of BCBSMI's Amended Complaint in its entirety.  BCBSMI cannot allege a viable breach of contract claim because, as BCBSA and BCBSMS have publicly concluded, AIS did not breach the agreement by billing per diem claims.  BCBSA and BCBSMS concluded and publicly announced that AIS's per diem billing is valid and contractually proper under an agreement that uses the exact same billing methodology that BCBSMI and AIS agreed on.  In light of the admissions that AIS's billing was contractually appropriate, BCBSMI cannot maintain any viable breach claim here.

BCBSMI also cannot allege any viable fraud claims for multiple reasons.  As an initial matter, BCBSMI cannot simply repackage its contract claim as one sounding in fraud.  Yet, that is all it does by asserting AIS's contracted-for billing practices are fraudulent.  Moreover, BCBSMS and BCBSA's admissions – that AIS's claims and billings do not constitute fraud – prevent BCBSMI from asserting any fraud claim in any event.  And even if could assert any fraud claim – it cannot –

2

BCBSMI fails to meet the heightened pleading requirements necessary for fraud claims.

BCBSMI's fraudulent misrepresentation claim suffers the same fatal flaws, too. BCBSMI does not, because it cannot, allege any duty separate and apart from AIS's alleged contractual obligations. Nor has BCBSMI alleged any facts that AIS made representations it knew were false, or that BCBSMI reasonably relied on AIS's supposed misrepresentations. BCBSMI even alleges that it continued to approve and pay AIS's claims *after* it "uncovered" the supposed fraud.

The Court should grant AIS's motion.

## **BACKGROUND**

AIS is a leading national provider of specialized home infusion therapy and related services.[1] Amended Complaint, ECF No. 16 ("Amend. Cmplt.") ¶ 7. Home infusion therapy involves the compounding, administering, and dispensing of medication by needle, catheter, or other non-oral means at a patient's home or other

---

[1] AIS Healthcare, *About Us*, https://aiscaregroup.com/about/ (last visited Nov. 29, 2022). The Court may consider materials in the public domain as well as documents referenced in the Amended Complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Stanley v. ExpressJet Airlines, Inc.*, 2017 WL 2462487, at *3 (E.D. Mich. June 7, 2017). AIS has attached recent public admissions by BCBSA and BCBSMS, as Exhibit A ("Ex.") to AIS's motion. Except as otherwise provided, the exhibits cited herein refer to those previously submitted with ECF No. 18.

outpatient location.[2] This therapy carries substantial and well-recognized benefits for patients and payors like BCBSMI. By receiving treatment via the implanted pump at home or other outpatient locations, patients may carry on with their normal lives and work activities.[3] And in light of the COVID-19 global pandemic, the flexible treatment options provided by home infusion therapy are even more necessary for immunocompromised patients seeking to limit their exposure to the virus.[4] Home infusion therapy is also far less costly than inpatient treatment at a hospital or nursing facility, thereby saving patients and their health plans money.

AIS offers a specialized kind of home infusion therapy whereby it dispenses individually-ordered, patient-specific, customized medications that are infused through implanted intrathecal pumps.[5] These pumps are surgically placed under the patient's skin and deliver compounded medication that is unique to each patient and infused daily through a catheter to the spinal column.[6] The surgical procedure,

---

[2] NHIA, *About Home And Specialty Infusion*, https://www.nhia.org/about-infusion-therapy/ (last visited Nov. 29, 2022).

[3] NHIA National Coding Standard for Home Infusion Claims under HIPAA, Version 1.11.01i, at 6 (Jan. 1, 2020), https://www.nhia.org/wp-content/uploads/2020/04/NHIA_Code_Std_2020_1.11.01il.pdf ("NHIA Standards").

[4] Yasir Hamad, et al., *COVID-19 and Outpatient Parenteral Antimicrobial Therapy: The Need to Protect Vulnerable Medicare Beneficiaries*, Annals of Internal Medicine (Sept. 1, 2020), https://www.acpjournals.org/doi/10.7326/m20-1774.

[5] AIS Healthcare, *Advancing quality in infusion care*, https://aiscaregroup.com/our-divisions/infusion-care/ (last visited Nov. 29, 2022).

[6] Mayfield Clinic, *Pain Pump*, at 1, https://d3djccaurgtij4.cloudfront.net/pe-pain-pump.pdf (last visited Nov. 29, 2022).

drugs, nursing, and pump are paid through distinct and separate billing codes and are not included in the per diem rate.

Physicians often prescribe intrathecal pumps for patients with severe chronic pain because they lessen pain and muscle spasticity caused by systemic conditions, such as cerebral palsy or spinal cord injuries.[7]  The pump, combined with AIS's services including, but not limited to, pharmacy services, clinical coordination, nursing, insurance navigation, and a 24/7 call center, allow these largely ambulatory patients to receive treatment while going on with their daily lives.

AIS develops the safest and highest quality compounded medications for its patients.[8]  AIS also provides patients with additional services in connection with its home infusion therapy, including patient-specific care management and training, administrative services, billing services, and around the clock patient support.

In 2018, BCBSMI and AIS entered a Home Infusion Therapy Facility Participation Agreement ("Agreement") under which AIS agreed to provide home infusion therapy services to BCBSMI members.  Amend. Cmplt. ¶ 8; ECF No. 18, Ex. 1 ("Agreement").  In return, BCBSMI agreed to pay AIS for providing home infusion services to its members under "per diem" standards established by the NHIA.  Agreement §§ 2.1-2.3, 3.3 & Addendum C.  AIS thus charged BCBSMI the

---

[7]  *Id.* at 1-2.
[8]  AIS, *Where higher quality leads to improving lives*, https://aiscaregroup.com/tdd-pharmacy/ (last visited Nov. 29, 2022).

agreed "per diem" amount for each day a given patient is provided access to a prescribed therapy.[9]  *Id.*, Addendum C.  Those charges apply each day the pump administers or infuses the medication, beginning on the day the therapy is initiated and ending when treatment is discontinued.[10]  The refilling of the pump reservoir and programming of the pump, by the treating physician, are separate procedure codes, not billable as an infusion or covered within the per diem rate.

Payors like BCBSMI, as well as BCBSA and other Blue Cross Blue Shield associations, have embraced the per diem model because it allocates risk between payors and providers to account for variations in treatment among patients receiving similar care.[11]  This is achieved by bundling several covered therapy services and expenses into one payment for each per diem billing code under the Healthcare Common Procedure Coding System ("HCPCS").  By bundling these services and expenses into one payment, the per diem rates prospectively shift the patient utilization risk to home infusion therapy providers like AIS, thereby incentivizing

---

[9]  NHIA Standards at 93.
[10]  *See id.* at 4 & 93.
[11]  *See* NHIA, *White Paper:  Home Infusion Services, Payment Models, and Operational Costs* at 3, https://docplayer.net/40675508-White-paper-home-infusion-services-payment-models-and-operational-costs.html  ("NHIA White Paper").  Indeed, other Blue Cross Blue Shield plans have adopted the per diem model.  *See, e.g.*, Blue Cross Blue Shield of Illinois, *Clinical Payment and Coding Policy*, https://www.bcbsil.com/provider/standards/standard-requirements/clinical-payment-coding-policies (last visited Nov. 29, 2022).

these providers to minimize costs and supply utilization.[12]  The bundled therapy services and expenses covered by the per diem include home infusion therapy, including the infusing of medication via intrathecal pumps and "administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment."[13]  A per diem charge is therefore properly applied when at least one covered service is provided.[14]

Per diem charges also reflect home infusion providers' substantial investments, costs, and efforts to make high quality drugs that remain safe, stable, and consistently dispense over an extended period of time.[15]  And they account for the fact that, while a patient receives a prescribed therapy, the home infusion provider maintains "continued responsibility for the patient," incurs "costs related to such responsibilities," and is responsible "for the acquisition and allocation of resources" necessary to provide anticipated patient care.[16]

Consistent with this approach, BCBSMI agreed to pay AIS a "bundled per diem for its services."  Agreement, Addendum C.  AIS correctly billed BCBSMI using HCPCS Code S9328, which by definition bundles covered home infusion services for "implanted pump pain management infusion; administrative services,

---

[12]  *See* NHIA White Paper, at 3.
[13]  NHIA Standards at 4.  Nursing visits and medications are billed separately.
[14]  *See id.* at 93-101 & 107.
[15]  *See id.* at 93.
[16]  *Id.*

professional pharmacy services, care coordination, and all necessary supplies and equipment . . . per diem." Amend. Cmplt. ¶ 15. For years, BCBSMI approved and paid AIS's charges under Code S9328 without issue. *Id.* ¶ 35.

But in 2019, BCBSMI reviewed AIS's claims and allegedly "uncovered" that AIS had failed to comply with additional requirements set out in its separate Provider Manual for billing Code S9328. *Id.* ¶¶ 20-29. To meet the requirements of its separate Provider Manual, BCBSMI alleged that AIS was required to provide "ongoing services," such as medical supervision, nursing, and patient support, and submit certificates of medical necessity ("CMNs") with its claims. *Id.* ¶¶ 17-19. BCBSMI further alleged AIS may only bill for days when a patient receives infusions and that no infusions are received except when the pump is refilled. *Id.* ¶¶ 32-33. BCBSMI also alleged AIS could not bill for days when it provided other services covered under Code S9328. *Id.*

BCBSMI continued to pay AIS's claims under Code S9328 after it conducted its investigation. It only began denying outstanding claims and to demand recoupment of prior approved claims from AIS on October 6, 2020. *Id.* ¶ 34; ECF No. 18, Ex. 2.

AIS promptly disputed BCBSMI' s allegations and denial of its claims. Amend. Cmplt. ¶ 34; ECF No. 18, Ex. 3. AIS explained that AIS could not provide the patient information sought by the CMNs because the patient's treating physician

maintained that information, not AIS.  ECF No. 18, Ex. 3.  AIS also explained that evidence of medical necessity was unnecessary where BCBSMI had already approved the medical necessity of the pain pumps, which would be useless without AIS's medication.  *Id.*  AIS further explained that, under the Agreement, AIS properly charged a per diem for each day a patient had access to a prescribed therapy and was entitled to payment "[s]o long as additional infusions are anticipated in the near future as prescribed" in the physician's plan of care.  Amend. Cmplt. ¶ 34; ECF No. 18, Ex. 3.  And AIS requested "an opportunity to sit down" with BCBSMI to resolve the dispute informally.  ECF No. 18, Ex. 3.

Instead of seeking out a business solution, BCBSMI escalated the dispute by summarily terminating the Agreement and filing suit.  Amend. Cmplt. ¶ 36; ECF No. 1.  BCBSMI alleges claims for breach of contract, violation of the HCFCA, and common law fraudulent misrepresentation.  In support of its breach claim, BCBSMI alleges AIS improperly submitted claims under Code S9328 when patients did not receive services or infusions.  Amend. Cmplt. ¶¶ 37-46.

BCBSMI alleges that AIS violated the HCFCA by receiving payments that "AIS knew it was not entitled to receive" and knowingly submitting claims "that contained false statements" from "April 1, 2018," to the time of filing its Amended Complaint.  *Id.* ¶¶ 51-52.  But BCBSMI does not identify any specific claims or false statements, or allege any specific facts demonstrating AIS knowingly submitted

9

false claims. *Id.* BCBSMI instead groups together claims for unidentified patients spanning several years, and summarily alleges that "all of the claims" AIS submitted "contained statements that were wholly or partially untrue or deceptive" without identifying any alleged false statements. *Id.* ¶¶ 108-112.[17]

In support of its fraudulent misrepresentation claim, BCBSMI alleges AIS made false representations about its compliance with the Agreement and Provider Manual and that BCBSMI relied on unidentified false representations to pay claims after it allegedly learned of their falsity. *Id.* ¶ 127. But BCBSMI does not identify any particular false statements, who made them, when any statements were made, or to whom.

AIS initially moved to dismiss BCBSMI's Amended Complaint for failure to state viable fraud and HCFCA claims. *See* ECF No. 18. But after the parties briefed that motion, AIS resolved a related litigation with BCBSMS and BCBSA. *See* Civil Action No. 3:21-cv-123-KHJ-MTP (S.D. Miss. 2021) ("Mississippi Litigation"). In that litigation, BCBSMS alleged essentially the same claims that BCBSMI alleges here. Like BCBSMI, BCBSMS alleged that AIS breached the parties' agreement and fraudulently billed claims under Code S9328 by billing under the "per diem"

---

[17]   BCBSMI asserts AIS knows which patients and claims BCBSMI summarily identifies in its Amended Complaint, but that is not true. Amend. Cmplt. ¶ 53 n. 1. BCBSMI has not provided AIS with information sufficient to identify the patients or claims BCBSMI alleges are at issue.

reimbursement model.  *See id.*, Dkt. No. 31, BCBSMS' Counterclaim ¶¶ 9-44.  And just like BCBSMI, it alleged that AIS billed Code S9328 when it did not provide services or infusions.  *Id.* ¶¶ 17-21.

In resolving the Mississippi Litigation, BCBSMS and BCBSA – the parent entity of BCBSMI and all Blue Cross Blue Shield associations – publicly admitted that AIS's per diem billing fully complied with the parties' agreement and "did not constitute fraud."  The relevant portion of the statement is reproduced below:

<u>Settlement Statement</u>

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("BCBSMS") and the Blue Cross Blue Shield Association ("BCBSA") have evaluated the billings by Bond Pharmacy dba AIS Healthcare ("AIS") that included per diems, and have now concluded, after further evaluation that all of AIS' bills to BCBSMS, including without limitation AIS' bills using HCPCS Code S9328 for per diems, did not constitute fraud, and made no finding of waste or abuse.

AIS, BCBSMS, BCBSA, and Advanced Health Systems, Inc. ("AHS") have settled all disputes arising out of, relating to, or concerning the claims and issues asserted by the parties to the legal proceedings in the lawsuit known as Bond Pharmacy d/b/a Advanced Infusion Solutions v. Advanced Health Systems, Inc. and Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company, United States District Court for the Southern District of Mississippi, Civil Action No. 3:21-cv-123-KHJ-MTP.  The settlement includes an arm's length negotiated resolution on mutually acceptable terms by which a confidential amount will be paid to AIS for past services.

*See* Exhibit ("Ex.") A.  Following these admissions, BCBSMS paid AIS for the  per diem claims that it had wrongfully denied.  *Id*.  In light of these admissions, AIS promptly amended its motion to dismiss to seek dismissal of BCBSMI's entire Complaint.

## **STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege plausible factual allegations that are "more

than labels and conclusions" or a "formulaic recitation of the elements of a cause of action[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That standard is even higher for fraud-based claims where a plaintiff must allege "with particularity the circumstances constituting fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).  A plaintiff must specifically allege the "time, place, and content of the alleged misrepresentation" on which it relied, the defendant's fraudulent scheme and intent, and resulting injury. *Id.*; *see Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 839-40 (E.D. Mich. 2016).  In granting a motion to dismiss, the Court may further rely on information and "documents that are a matter of public record." *Stanley*, 2017 WL 2462487, at *3; *see Edwards v. Standard Fed. Bank, N.A.*, 2009 WL 92157, at *2 (E.D. Mich. Jan. 14, 2009).

On application of these standards, the Court should now dismiss BCBSMI's Amended Complaint in its entirety.

## **ARGUMENT**

## I.     **BCBSMI Cannot Allege A Viable Breach Claim.**

BCBSMI's breach of contract claim fails for a straightforward reason: It cannot allege any viable breach of the Agreement by AIS. *Zaher v. Argent Mortg. Co., LLC*, 2017 WL 193550, at *4 (E.D. Mich. Jan. 18, 2017).  That is because BCBSA and BCBSMS have publicly admitted that AIS's billing practices fully complied with the Agreement. *Compare* Amend. Cmplt. ¶¶ 37-46, *with* Ex. A.

12

BCBSMI alleges that AIS breached the Agreement by billing Code S9328 using the per diem reimbursement model when patients did not receive services or infusions. Amend. Cmplt. ¶¶ 37-46. That is the exact same billing practice and issue that was in dispute in the Mississippi Litigation. *See* Mississippi Litigation, Dkt. No. 31, BCBSMS' Counterclaim ¶¶ 17-21. In resolving that litigation, BCBSMS and BCBSA reviewed "all" of AIS's "bills using HCPCS Code S9328." Ex. A. They then admitted that, based on the review, AIS's claims were properly billed under the parties' agreement and did not constitute "fraud," "waste," or "abuse" – and even paid AIS for wrongfully denied claims. *Id.* As a result, BCBSMI "cannot maintain a breach of contract action" against AIS based on the same billing practice that its parent entity and affiliate have publicly admitted is contractually proper and valid. *Acheampong v. Bank of N.Y. Mellon*, 2013 WL 173472, at *9 (E.D. Mich. Jan. 16, 2013). BCBSMI's breach claim must be "dismissed." *Id.*

Indeed, Courts in this District regularly dismiss claims where, as here, they are contradicted and undermined by public admissions. *See Acheampong*, 2013 WL 173472, at *9; *see also In re Flint Water Cases*, 453 F. Supp. 3d 970, 995 n. 11 (E.D. Mich. 2020) (dismissing tort claims against defendant based on his role in a government program because, according to public reports, he "stepped down" as supervisor before the program began). For example, in *Acheampong*, the Court dismissed plaintiff's breach of contract claim because the plaintiff publicly admitted

13

he did not comply with the necessary conditions to form an enforceable agreement. *See Acheampong*, 2013 WL 173472, at *9. To become enforceable, the agreement required the plaintiff to make payments by certain deadlines. *See id.* But the plaintiff admitted the initial payments were untimely. *See id.* Accordingly, the Court "dismissed" plaintiff's breach claim based on the public "admission" that the parties' contract was unenforceable. *Id.*

The same should go here. Just as in *Acheampong*, BCBSMI's breach claim is undermined by its own parent and affiliate's public admissions that AIS's billing practices comply with the same per diem billing requirements as those under the Agreement. *See id.*; Ex. A. There is thus no "basis" for BCBSMI to assert that AIS has breached the Agreement by adopting the exact same approved billing practices. *Riley v. Commc'ns Workers of Am.*, 1987 WL 46347, at *1 (E.D. Mich. Nov. 18, 1987).

## II.  BCBSMI Cannot Allege A Viable HCFCA Claim.

BCBSMI's statutory claim suffers multiple fatal defects. *First*, BCBSMI cannot base an HCFCA claim on alleged "contractual violations." *Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 196 (2016); *see also U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 434 (6th Cir. 2016) ("'[I]t is well settled that 'a mere breach of contract does not give rise to liability''" under the HCFCA) (citation omitted); *see also U.S. ex rel. Winkler v. BAE Sys., Inc.*, 957

F. Supp. 2d 856, 869 (E.D. Mich. 2013); *U.S. ex rel. Hutchins v. DynCorp Int'l, Inc.*, 342 F. Supp. 3d 32, 47 (D.D.C. 2018).  But that is all that BCBSMI attempts here. Amend. Cmplt. ¶¶ 31-33 & 110-13.  Its HCFCA claim is based entirely on AIS's alleged failure to comply with the Agreement and Provider Manual policies. *Compare id.* ¶¶ 40-45, with ¶¶ 108-110; *see Winkler*, 957 F. Supp. 2d at 869.

*Second*, BCBSMI's statutory claim is wholly undermined by the admissions of its parent and affiliate acknowledging the propriety of AIS's billing practices. *See Acheampong*, 2013 WL 173472, at *9; Ex. A.  Following an exhaustive review of AIS's claims, BCBSA and BCBSMS concluded that AIS's billing practices – the same practices that form the basis of BCBSMI's statutory claim – did not "constitute fraud" and were proper.  Ex. A.  These public admissions completely undermine any allegations that AIS "knowingly" submitted false claims.  M.C.L. 752.1009; *see Acheampong*, 2013 WL 173472, at *9; Amend. Cmplt. ¶ 112.

*Third*, even aside from these admissions, BCBSMI does not allege any plausible factual allegations that AIS received payment it knew it was "not entitled to receive or be paid," or "knowingly" presented a claim containing a "false statement."  M.C.L. 752.1002(c) & 752.1009.[18]  AIS in fact disputed BCBSMI's

---

[18]  While there is limited case law interpreting the HCFCA, this Court has relied on cases interpreting similar provisions of the Federal False Claims Act ("FCA") to address claims under Michigan's healthcare fraud statutes. *See U.S. ex rel. Yanity v. J & B Medical Supply Co., Inc.*, 2012 WL 4811288, at *5-6 (E.D. Mich. Oct. 10, 2012); *compare also* M.C.L. 752.1009, *with* 31 U.S.C. § 3729(a)(1)(A)-(B)

allegations and asserted that it was entitled to payment under the Agreement. Amend. Cmplt. ¶ 34.  Nor does BCBSMI allege any facts meeting the HCFCA statutory elements with particularity, including the "time, place, and content" of the misrepresentations, the defendant's fraudulent scheme and intent, and the resulting injury.  *See Bennett*, 607 F.3d at 1100; *State ex rel. Gurganus v. CVS Caremark Corp.*, 852 N.W.2d 103, 112 (Mich. 2014).  It does not allege the "content" of any purportedly false statement contained in each claim submitted by AIS.  *U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 355¬56 (E.D. Mich. 2011).  Instead, BCBSMI summarily alleges that "[a]ll of the claims" contained "statements that were wholly or partially untrue or deceptive" without any detail on what those statements were and what was false about them.  Amend. Cmplt. ¶ 108. That "shotgun approach" to pleading an HCFCA claim does not work.  *McNulty*, 835 F. Supp. 2d at 355-56; *see Chesbrough v. VPA, P.C.*, 655 F.3d 461, 472 (6th Cir. 2011).  The "content" of the alleged false claims is an "essential element[ ]" of an HCFCA claim, and BCBSMI's failure adequately to allege that essential element further warrants dismissal.  *McNulty*, 835 F. Supp. 2d at 355-56.

---

(describing liability for a person who "knowingly presents" a "false or fraudulent" claim for payment or "knowingly makes, uses, or causes to be made or used, a false record or statement").

### III.   BCBSMI Cannot Allege A Viable Misrepresentation Claim.

BCBSMI's misrepresentation claim also fails for multiple reasons.  As with its statutory claim, BCBSMI cannot convert its meritless breach claim into a fraudulent misrepresentation claim.  Because this claim sounds in tort, BCBSMI must allege AIS violated some duty "*separate and distinct* from its contractual obligations."  *Randall S. Miller & Assocs., P.C. v. Pitney Bowes, Inc.*, 2016 WL 1242356, at *4 (E.D. Mich. Mar. 30, 2016) (emphasis added) (quoting *I-Fusion Tech., Inc. v. TRW Automotive U.S., L.L.C.,* 2012 WL 6604701, at *3 (Ct. App. Mich. Dec. 18, 2012)); *see Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545-46 (Ct. App. Mich. 1995).  BCBSMI cannot just base its misrepresentation claim "upon the same conduct giving rise to [AIS's] breach of contract."  *Convergent Group Corp. v. Cnty. of Kent*, 266 F. Supp. 2d 647, 660-61 (W.D. Mich. 2003); *Randall S. Miller & Assocs., P.C.*, 2016 WL 1242356, at *4.

But that is all that BCBSMI has done here.  It does not allege (because it obviously cannot) any duty that arises independently of AIS's alleged contractual obligations.  *See Convergent Group Corp.*, 266 F. Supp. 2d at 660-61.  To the contrary, BCBSMI's claim is expressly based on AIS's alleged breaches of contractual duties: that AIS did not provide ongoing services and billed for days of actual infusion.  *Compare* Amend. Cmplt. ¶¶ 40-45, *with id.* ¶¶ 120-23; *see Randall S. Miller & Assocs., P.C.*, 2016 WL 1242356, at *4.  BCBSMI's claim is thus

17

"undergirded by factual allegations identical to those supporting" its breach claim and cannot proceed. *Huron Tool & Eng. Co.*, 532 N.W.2d at 545; *see Randall S. Miller & Assocs., P.C.*, 2016 WL 1242356, at *4.

Nor can BCBSMI's fraud claim proceed in light of BCBSMS and BCBSA's admissions. *See Acheampong*, 2013 WL 173472, at *9. BCBSMI's parent entity and affiliate have publicly admitted that AIS's billing practices are entirely proper and thus do not "constitute fraud," "waste," or "abuse." Ex. A. In light of these admissions, BCBSMI has no basis to and cannot continue to assert that AIS's claims and billing practices are somehow fraudulent. *Riley*, 1987 WL 46347, at *1.

Even if BCBSMI could push a fraud claim in the face of admissions that AIS's practices are entirely legitimate, it has not alleged (and now clearly cannot allege) with the required Federal Rules of Civil Procedure Rule 9 particularity that AIS knowingly made a false "material representation." *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791,802 (E.D. Mich. 2012); *see also Bennett*, 607 F.3d at 1100-01; *Cruz*, 192 F. Supp. 3d at 839-40. Indeed, it does not allege with particularity any "specific fraudulent conduct" or misrepresentations. *Hendricks v. Bronson Methodist Hosp., Inc.*, 2014 WL 3752917, at *3 (W.D. Mich. July 30, 2014); *Randall S. Miller & Assocs, P.C.*, 2016 WL 1242356, at *7. While BCBSMI alleges that AIS submitted "numerous" claims containing false representations "[b]eginning April 1, 2018," Amend. Cmplt. ¶ 119, it does not identify a "single" specific

18

misrepresentation, much less its "time, place, and content." *Gurganus*, 852 N.W.2d at 113; *Gregory*, 890 F. Supp. 2d at 801; *Yermian v. Countrywide Home Loans, Inc.*, 2009 WL 5150882, at *5 (E.D. Mich. Dec. 17, 2009).

In the same vein, BCBSMI has not plausibly alleged (and now clearly cannot) that AIS made any false representations *knowingly*. *See Lemanski v. Rev Group, Inc.*, 2019 WL 5455416, at *8 (E.D. Mich. Oct. 24, 2019). While BCBSMI alleges AIS "knew [its] representations" were "false, or recklessly disregarded their falsity," it fails to allege any facts supporting its bare conclusory allegations. Amend. Cmplt. ¶ 124. That kind of generality will not do in this District. *See*, *e.g.*, *Lemanksi*, 2019 WL 5455416, at *8 (dismissing fraud claim where plaintiff only alleged defendant made a representation "knowing it was false and/or recklessly without knowledge of its truth" without any supporting factual allegations); *Yermian*, 2009 WL 5150882, at *5 (same). And even if it could, it cannot even maintain its generalized allegations in the face of its parent and affiliate's contrary admissions that AIS's claims billed under the same code and in the same way were not fraudulent. Ex. A.

BCBSMI has not alleged – and cannot now – that it reasonably relied on AIS's misrepresentations. *See MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 662-63 (6th Cir. 2013); *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Ct. App. Mich. 1999). BCBSMI alleges it investigated AIS's representations but continued to pay AIS's claims after it supposedly ferreted out the

fraud.  Amend. Cmplt. ¶¶ 21 & 35.  But a plaintiff cannot allege reliance where it had the "means to determine that a representation was not true," *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 435 (Ct. App. Mich. 2009) (quoting *Nieves v. Bell Industries, Inc.,* 517 N.W.2d 235, 238 (Ct. App. Mich. 1994)); Amend. Cmplt. ¶¶ 21-29, or had "full knowledge to the contrary of [the] representation" and continued to rely on it anyway.  *Arrowood Indem. Co. v. Cristini*, 630 Fed. App'x 512, 516 (6th Cir. 2015) (quoting *Montgomery Ward & Co. v. Williams,* 47 N.W.2d 607, 611 (Mich. 1951)); *see Bushman v. Am. Title Co. of Washtenaw*, 101 F. Supp. 3d 714, 719 (E.D. Mich. 2015).  Because that is the case here, BCBSMI's claim cannot properly proceed.

## CONCLUSION

The Court should grant AIS's motion and dismiss the Amended Complaint with prejudice.

Date:  December 7, 2022        Respectfully submitted,

HONIGMAN LLP
*Attorneys for Defendant*

By:  /s/ I.W. Winsten
I. W. Winsten (P30528)
HONIGMAN LLP
660 Woodward, Ste. 2290
Detroit, MI  48226
Telephone:  (313) 465-7608
iww@honigman.com

Paul Werner
Imad Matini
Amanda Witt
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave. NW, Ste. 100
Washington, D.C.  20006
Telephone:  (202) 747-1931
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
awitt@sheppardmullin.com

46132057.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2022, Plaintiff's counsel was served

with the foregoing documents through the Court's Electronic Case Filing System.

By:<u>*/s/ I. W. Winsten*        </u>
                 I. W. Winsten