UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Plaintiff,

v.

BOND PHARMACY, INC. d/b/a
ADVANCED INFUSION SOLUTIONS,

        Defendant.

Case No. 21-cv-10076

Hon. Denise Page Hood

Magistrate Judge
Kimberly G. Altman

| | |
|---|---|
| Scott R. Knapp (P61041) | I. W. Winsten (P30528) |
| Nolan J. Moody (P77959) | HONIGMAN LLP |
| DICKINSON WRIGHT PLLC | Attorneys for Defendant |
| Attorneys for Plaintiff | 660 Woodward Avenue |
| 123 W. Allegan Street, Suite 900 | Detroit, MI 48226-3506 |
| Lansing, MI 48933-1739 | (313) 465-7608 |
| (517) 371-1730 | iww@honigman.com |
| sknapp@dickinsonwright.com | |
| nmoody@dickinsonwright.com | Paul Werner |
| | Imad Matini |
| | Amanda Witt |
| | SHEPPARD, MULLIN, RICHTER & |
| | HAMPTON LLP |
| | Attorneys for Defendant |
| | 2099 Pennsylvania Ave. NW, Ste. 100 |
| | Washington, D.C. 20006 |
| | (202) 747-1931 |
| | pwerner@sheppardmullin.com |
| | imatini@sheppardmullin.com |
| | awitt@sheppardmullin.com |

**PLAINTIFF BLUE CROSS BLUE SHIELD OF MICHIGAN'S
BRIEF IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 28]**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  RELEVANT BACKGROUND FACTS ........................................................4

    A.   Facts as alleged in the FAC, taken as true and properly considered with regard to a Rule 12(b)(6) motion ................................4

    B.   Counterstatement of facts asserted by Defendant, but not contained within the FAC, and not properly considered with regard to a Rule 12(b)(6) motion........................................................8

III. ARGUMENT...........................................................................................13

    A.   Legal Standard..................................................................................13

    B.   BCBSM Has Stated a Claim for Breach of Contract .........................14

    C.   BCBSM Has Stated a Claim for Violation of the Michigan HCFCA..............................................................................................16

        1.   BCBSM has alleged more than a mere breach of contract.......16

        2.   BCBSM has pled its HCFCA claim with sufficient particularity .............................................................................19

    D.   BCBSM Has Stated a Claim for Common Law Fraud ......................21

        1.   BCBSM's breach of contract claim does not preclude BCBSM's fraud claim...........................................................21

        2.   BCBSM has pled its fraud claim with sufficient particularity .............................................................................23

        3.   BCBSM has pled reasonable reliance......................................24

IV.  CONCLUSION.......................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Acheampong v. Bank of N.Y. Mellon*, 2013 WL 173472 (E.D. Mich. Jan. 16, 2013) ................................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................14

*Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950 (E.D. Mich. 2017) ......................................................................................................................13

*Bauer v. County of Saginaw,* 111 F. Supp. 3d 767 (E.D. Mich. 2015) ....................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................14

*Burns v. U.S.*, 542 Fed. App'x 461 (6th Cir. 2013) .................................................14

*Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545 (6th Cir. 1995) ............................................................................................... vii, 21

*Chesbrough v. VPA, P.C.*, 655 F.3d 461 (6th Cir. 2011) ........................................16

*Convergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647 (W.D. Mich. 2003) ................................................................................................21

*Excel Homes, Inc. v. Locricchio*, 7 F. Supp. 3d 706 (E.D. Mich. 2014) .................12

*Galeana Telecomm. Inv. Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711 (E.D. Mich. 2016) ............................................................................... vii, 21, 22

*Hart v. Ludwig*, 347 Mich. 559; 79 N.W.2d 895 (1956) ........................................22

*Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365; 532 N.W.2d 541 (1995) .....................................................21

*In re Omnicare, Inc. Securities Litig.*, 769 F. 3d 455 (6th Cir. 2014) .............. 12, 13

*InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 413 F. Supp. 3d 687 (E.D. Mich. 2019).................................. vii, 14

*Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) ............................................................14

*Passa v. City of Columbus*, 123 Fed. App'x 694 (6th Cir. 2005).................... 12, 13

*Randall S. Miller & Associates, P.C. v. Pitney Bowes, Inc.*, 2016 WL 1242356 (E.D. Mich. Mar. 30, 2016) ................................................21

*Robert Bosch Corp. v. ASC Inc.*, 195 Fed. App'x 503 (6th Cir. 2006) ....................4

*Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905 (E.D. Mich. 2019) .................................................................... vii, 23, 24

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493 (6th Cir. 2007) ................................................................20

*U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296 (6th Cir. 1998) ............................................................ vii, 17

*United States v. Science Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) ................................................................17

*Winkler v. BAE Systems, Inc.*, 957 F.Supp.2d 856 (E.D. Mich. 2013)....................17

**Statutes**

M.C.L. 752.1009 ........................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................ vii, 12

# COUNTER-STATEMENT OF ISSUES PRESENTED

1.      Where the Agreement between Plaintiff Blue Cross Blue Shield of Michigan ("BCBSM") and Defendant Bond Pharmacy, Inc. d/b/a Advanced Infusion Solutions ("Defendant" or "AIS") expressly required Defendant to "provide ongoing services" as a condition precedent to billing S9328 claims, and where BCBSM alleged that Defendant billed BCBSM and was paid for S9328 claims despite not providing any ongoing services, has BCBSM stated a viable breach of contract claim?

ANSWER:  Yes.

2.      Where BCBSM has alleged, *inter alia*, that Defendant knowingly submitted to BCBSM claims for payment for services that were never provided, and knowingly executed a false certification stating that the services had been performed; where Defendant knew that BCBSM would not pay the claims unless it believed the false certifications; and where BCBSM justifiably relied upon the false claims and false certifications, and paid the claims, has BCBSM stated a viable claim for violation of the Michigan Health Care False Claims Act?

ANSWER:  Yes.

3. Where BCBSM has alleged, *inter alia*, that Defendant knowingly submitted to BCBSM claims for payment for services that were never provided, and knowingly executed a false certification stating that the services had been performed; where Defendant knew that BCBSM would not pay the claims unless it believed the false certifications; and where BCBSM justifiably relied upon the false claims and false certifications, and paid the claims, has BCBSM stated a viable claim for common law fraud?

ANSWER: Yes.


4. Where two entities unrelated to BCBSM—the Blue Cross Blue Shield Association ("BCBSA") and Blue Cross Blue Shield of Mississippi ("BCBSMS")—made statements in resolution of a different litigation about a materially different contract with Defendant; and where none of those "facts" appear in BCBSM's First Amended Complaint; must this Court wholly disregard same in deciding the instant Rule 12(b)(6) motion?

ANSWER: Yes.

## MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 12(b)(6)

*InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 413 F. Supp. 3d 687 (E.D. Mich. 2019)

*U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296 (6th Cir. 1998)

*Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905 (E.D. Mich. 2019)

*Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545 (6th Cir. 1995)

*Galeana Telecomm. Inv. Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711 (E.D. Mich. 2016)

## I.  INTRODUCTION

In its Amended Motion to Dismiss ("Defendant's Motion"), ECF No. 28, Defendant has regurgitated precisely the same arguments it made in its prior Motion to Dismiss [ECF No. 8], which was fully briefed and argued last year. The only addition is Defendant's contention—without citation to anything—that BCBSM's "parent," the Blue Cross Blue Shield Association ("BCBSA") and BCBSM's "affiliate," Blue Cross Blue Shield of Mississippi ("BCBSMS") issued a statement as part of the settlement of a case in Mississippi (the "Mississippi Litigation"), wherein BCBSM's "parent and affiliate" admitted that Defendant's "exact same" billing practices did not violate an identical contract.  Based upon those "facts"—none of which are contained within BCBSM's First Amended Complaint ("FAC")—Defendant argues that BCBSM's claims here must be dismissed.

Except none of those asserted "facts" are true.  BCBSA is not BCBSM's parent; BCBSMS is not BCBSM's affiliate; their statements thus cannot be imputed to BCBSM under any legal theory; and the key contractual terms of the agreements at issue in the Mississippi Litigation and this case are materially different.  This Court granted Defendant's Motion for Leave to File an Amended Motion to Dismiss [ECF No. 26]—presumably based upon the Court's belief as to the veracity of those false assertions of fact—before BCBSM had the

opportunity to respond to that motion, and debunk the false statements contained therein.[1]  Defendant's Motion immediately followed.

At issue in this case is the submission by Defendant to BCBSM of "per diem" claims using billing code S9328.  "To qualify for an S code, *in addition to dispensing medication* [AIS] must *provide ongoing services. . . ."* FAC, ECF No. 16 at ¶17; PageID.130 (quoting the Agreement) (emphasis added).  Defendant submitted to BCBSM – and BCBSM paid – millions of dollars in claims under billing code S9328.  The problem is that Defendant actually did <u>nothing</u> "in addition to dispensing medication;" Defendant absolutely did <u>not</u> "provide ongoing services."  When BCBSM learned that Defendant had submitted, and been paid for claims for services that were not actually provided to BCBSM's members, BCBSM ceased paying Defendant's S9328 claims, and eventually brought this suit to recover monies wrongfully paid to Defendant.

BCBSM brought a breach of contract claim (Count I), wherein BCBSM alleges that Defendant failed to follow mandatory contractual provisions, billed and was paid for services never provided, and thus breached the contract.  And notwithstanding Defendant's arguments to the contrary, BCBSM's claims

---

[1] On December 20, 2022, BCBSM filed a Motion for Reconsideration of Order Granting Motion for Leave to File an Amended Motion to Dismiss [ECF No. 29], which squarely addressed and conclusively refuted the false (and sole) premise upon which Defendant sought leave.  That motion remains pending and, if granted, would moot the instant motion.

(Counts II and III of the FAC) for fraud and violation of the Michigan Health Care False Claims Act ("HCFCA") are *not* based merely on Defendant's failure to adhere to contract terms. The crux of BCBSM's statutory and common law fraud claims is this: Defendant submitted claims to BCBSM (i.e., requests for payment) for services Defendant knew that it never provided; and as to every one of those claims, Defendant executed a separate certification, as required by the Agreement, that "the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction." FAC, ECF No. 16 at ¶110; PageID.145.

BCBSM has alleged that each of those certifications was both material and knowingly false (because Defendant knew it "furnished" no "services"). BCBSM justifiably relied upon those false representations and paid the claims. Those allegations adequately state fraud and HCFCA claims. And contrary to the arguments made by Defendant, those claims are distinct from, and not foreclosed by the breach of contract claim.

## II. RELEVANT BACKGROUND FACTS

### A. Facts as alleged in the FAC, taken as true and properly considered with regard to a Rule 12(b)(6) motion[2]

On or about April 1, 2018, AIS and BCBSM entered into the Home Infusion Therapy Facility Participation Agreement ("HITFPA"). FAC, ECF No. 16 at ¶8; PageID.128. The HITFPA expressly incorporates by reference BCBSM's Provider Manual and its Medical Policy (the HITFPA, Provider Manual, and Medical Policy are, together, the "Agreement"). *Id*. at ¶9; PageID.128 (citing HITFPA at ¶1.1).[3] The Agreement is fully integrated, and "constitutes the entire Agreement between the parties and supersedes any and all prior agreements or representations oral or written as to matters contained herein, and supersedes any agreements between [AIS] and BCBSM which conflict with the terms and conditions of this Agreement." FAC, ECF No. 16 at ¶10;

_____

[2] These facts are taken verbatim from the FAC.

[3] In its brief, Defendant states that certain key terms to the Agreement are "set out in [BCBSM's] separate Provider Manual for billing code S9328." Defendant's Brief, ECF No. 28; PageID.349. But "Michigan law permits a party to incorporate terms or documents from other writings." *Robert Bosch Corp. v. ASC Inc.*, 195 Fed. App'x 503, 505 (6th Cir. 2006). When a contract incorporates another writing by reference, the writing becomes part of the contract, and courts must construe the two documents as a whole. *Bauer v. County of Saginaw,* 111 F. Supp. 3d 767, 780 (E.D. Mich. 2015) ("In a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract."). Thus, the terms of the Provider Manual are valid and fully enforceable as a matter of law.

PageID.128-29 (quoting HITFPA at ¶6.10). The parties did not agree to incorporate any standard(s) set by the National Home Infusion Association ("NHIA"), and the Agreement thus makes no mention of same. *Id*. at ¶11; PageID.129.

Under the Agreement, BCBSM agreed to pay AIS, under appropriate circumstances, for certain home infusion therapy services that AIS may provide to BCBSM's Members ("Covered Services"). FAC, ECF No. 16 at ¶12; PageID.129 (citing HITFPA at Addendum C). Pursuant to the Agreement, when a BCBSM Member receives a Covered Service from AIS, AIS submits a claim to BCBSM for that Covered Service and, in turn, BCBSM pays AIS directly for Covered Services. *Id*. at ¶13 (citing HITFPA at ¶2.1).

At issue in this lawsuit is AIS's claim submissions to BCBSM for payment for durable medical equipment, supplies, and solutions (one of the Covered Services under Addendum C to the Agreement). FAC, ECF No. 16 at ¶14; PageID.129. The Medical Policy Procedure Code Nomenclature provides that billing code S9328 with regard to Home Infusion Therapy ("HIT") is used for "[HIT], implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment, (drugs and nursing visits coded separately), per diem." *Id*. at ¶15; PageID.129-30. In other words, for AIS to submit claims to BCBSM for

"durable medical equipment, supplies, and solutions," AIS must submit claims to BCBSM using billing code S9328. *Id*. at ¶16; PageID.130. The Provider Manual further states that "[t]o qualify for an S code, in addition to dispensing medication **[AIS] must provide ongoing services**, such as: Medical supervision, [n]ursing, [p]atient or caregiver training, [and] [p]atient support." *Id*. at ¶17 (quoting Provider Manual at 13 (Home Infusion Therapy Services at "HIT services")) (emphasis added).[4]

In 2019, BCBSM initiated an investigation into AIS's use of the S9328 billing code after receiving complaints about AIS's billing practices. Prior to that time, BCBSM was unaware of any wrongdoing by AIS. FAC, ECF No. 16 at ¶20; PageID.131. That investigation preliminarily uncovered that AIS was using S9328 to submit claims to BCBSM in instances where AIS was merely selling the HIT pharmaceutical component to providers in Michigan (and submitting claims to BCBSM for that pharmaceutical component). However, those

---

[4] The "per diem [S9328] is payable only on days when the patient is receiving actual infusion of medications…." FAC, ECF No. 16 at ¶32; PageID.133 (quoting HITFPA at Addendum C). In its brief, and contrary to the express terms of the Agreement, Defendant states: "[U]nder the Agreement, AIS properly charged a per diem for each day a patient *had access* to a prescribed therapy and was entitled to payment 'so long as additional infusions *are anticipated* in the near future as prescribed….'" Defendant's Brief, ECF No. 28; PageID.350 (emphasis added). Defendant's alleged "fact" must be disregarded because 1) Defendant is quoting from its own counsel's after-the-fact correspondence to BCBSM (see, *infra*, n.8); and 2) the assertion directly contradicts both the express terms of the Agreement, and BCBSM's related allegations in the FAC.

Michigan providers – and not AIS – were overseeing administration of the drug and otherwise managing the patient's care. *Id*. at ¶21. That is, the investigation appeared to reveal that despite submitting claims to BCBSM using S9328 (in addition to the pharmaceutical code), AIS was *not* providing any ongoing services such as medical supervision, nursing, patient or caregiver training, or patient support. *Id*. at ¶22; PageID.131-32.

In an effort to confirm these findings, on December 19, 2019, BCBSM placed AIS on a Pre-payment Utilization Review ("PPUR"), wherein BCBSM required that for every claim submitted by AIS, it needed to provide to BCBSM certain documentation to substantiate that claim. FAC, ECF No. 16 at ¶23; PageID.132. AIS failed under the PPUR to substantiate any of the claims that it submitted to BCBSM for billing code S9328. Specifically, AIS failed to provide evidence showing that it provided any ongoing services. *Id*. at ¶¶24 and 25. BCBSM then understood that AIS was billing and being paid for services it did not actually perform and, as a result, BCBSM refused to pay AIS's claims under billing code S9328. That is, when BCBSM learned of AIS's fraudulent billing practices with regard to the S9328 claims, BCBSM stopped paying them. *Id*. at ¶27.

In total, BCBSM has paid AIS more than $6 million for claims that it submitted with code S9328. AIS provided no ongoing services to BCBSM's

Members that would justify billing BCBSM under that code. FAC, ECF No. 16 at ¶35; PageID.134. By letter dated January 6, 2020, BCBSM terminated the Agreement with AIS. *Id*. at ¶36.

> **B.** **Counterstatement of facts asserted by Defendant, but not contained within the FAC, and not properly considered with regard to a Rule 12(b)(6) motion**

In its Introduction, Defendant states:

> BCBSMI's breach of contract and fraud claims are facially meritless. Blue Cross Blue Shield Association ("BCBSA") – the parent entity of BCBSMI and all BCBS associations – and Blue Cross & Blue Shield of Mississippi ("BCBSMS") have now publicly confirmed this reality. After thoroughly reviewing AIS's Code S9328 claims – the very same type of claims and code at issue here – BCBSA and BCBSMS publicly admitted that AIS properly billed its claims and that its billing practices did not constitute fraud. . . . In the face of these admissions, BCBSMI's copycat lawsuit – purporting to challenge the very same billing practices that its parent and affiliate have now approved – is properly and swiftly dismissed for failure to state any viable claim for relief.

Defendant's Motion, ECF No. 28; PageID.342. Defendant then repeats various iterations of same throughout its brief:

> BCBSMI alleges that AIS breached the Agreement by billing Code S9328 using the per diem reimbursement model when patients did not receive services or infusions. That is the exact same billing practice and issue that was in dispute in the Mississippi Litigation. . . BCBSMI "cannot maintain a breach of contract action" against AIS based on the same billing practice that its parent entity and affiliate have publicly admitted is contractually proper and valid.

*Id.* at PageID.354 (citations omitted).  *See also id.* at PageID.339, 343, 352, 353, 355, 356, 359 and 360.

The above quoted statements are provably false.  First, BCBSA is not BCBSM's parent; and BCBSMS is not BCBSM's affiliate.  *See* Declaration of Liz Irick, attached here as **Exhibit A**, at ¶¶ 3-4 ("BCBSM is a nonprofit mutual insurance company, without shareholders, and it has no parent company.  That is, neither the Blue Cross Blue Shield Association ('BCBSA'), nor any other entity is BCBSM's parent.   Neither Blue Cross Blue Shield of Mississippi, nor Advanced Health Systems, Inc. [the defendants in the Mississippi Litigation] is an affiliate of BCBSM");[5] MCL 500.5825 (authorizing BCBSM as a nonprofit mutual insurer without shareholders or parent corporation and, because it has no shareholders or parent, requiring payment upon sale or dissolution of BCBSM "for the benefit of the people of this state to the Michigan health endowment fund").  Because Defendant's assertions of fact are false, and the parties to the Mississippi Litigation are unrelated to BCBSM, there thus exists no legal or

---

[5] The irony of BCBSM being forced to submit a declaration in support of its Rule 12(b)(6) opposition brief is not lost upon BCBSM.  But where, as here, the Defendant presents "evidence" outside the four corners of the FAC, the Defendant's assertions of fact are false, Defendant cites to nothing to support its false statements, and Defendant relies upon its own false statements to seek dismissal of BCBSM's claims, how else can BCBSM correct the record and refute those statements?

factual basis to somehow impute to BCBSM the statements of BCBSA and BCBSMS.[6]

Moreover, even if those statements by unrelated entities could be imputed to BCBSM (they absolutely cannot), the issues in the Mississippi Litigation and those *sub judice* are not the same. To be sure, both cases involve Defendant's use of billing code S9328. *See* Defendant's Motion, ECF No. 28; PageID.352; BCBSM's FAC, ECF No. 16; PageID.130. And "BCBSMS and BCBSA. . . publicly admitted that AIS's per diem billing fully complied with the parties' agreement." Defendant's Motion, ECF No. 28; PageID.352. But the terms of the provider agreement in the Mississippi Litigation are materially different than the terms of the BCBSM/AIS Agreement being litigated in this Court.

As but only one (but crucial) example, and unlike in the Mississippi Litigation, the Participation Agreement in *this case* expressly incorporates

---

[6] Defendant cites *Acheampong v. Bank of N.Y. Mellon*, 2013 WL 173472 (E.D. Mich. Jan. 16, 2013), disingenuously asserting that the court in that case dismissed "plaintiff's breach claim based on the public 'admission' that the parties' contract was enforceable." Defendant's Motion, ECF No. 28; PageID.355. The *Acheampong* court did dismiss plaintiff's breach of contract claim, but did so because an exhibit to *plaintiff's own complaint* showed that "his first payment was not timely." *Acheampong*, 2013 WL 173472, *9. A writing attached to a plaintiff's own complaint—something that *can* be considered in a Rule 12(b)(6) motion—and a statement by unrelated parties in a different litigation (which *cannot* be considered in a Rule 12(b)(6) motion) are not the same thing. Defendant provides no authority for the proposition that the unrelated entities' statements in the Mississippi Litigation can be imputed to BCBSM and/or that they have any relevance, particularly in the context of a Rule 12(b)(6) motion.

BCBSM's Provider Manual and its Medical Policy. *See* FAC, ECF No. 16 at ¶9; PageID.128. That Provider Manual states that "[t]o qualify for an S code. . . , [AIS] **must provide ongoing services**." *Id*. at ¶17; PageID.130 (emphasis added). And BCBSM alleged that "AIS breached the Agreement by submitting claims to BCBSM using billing code S9328 in instances where AIS **provided no ongoing services**." *Id*. at ¶40; PageID.135 (emphasis added). No such "must provide ongoing services" provision exists in the Mississippi Litigation contract. So while BCBSM is unaware as to what went into resolution of the Mississippi Litigation, whether AIS did or didn't comply with the (different) BCBSMS contract has zero relevance here.

Moreover, as it did in its prior motion to dismiss, and in an effort to conjure a defense, Defendant spends considerable time in its brief citing to, and quoting from the writings of a trade organization, the National Home Infusion Association ("NHIA"), to which Defendant belongs. Defendant seeks to turn those self-serving advocacy pieces into "facts" and ostensible contract terms by asserting that BCBSM "agreed to pay AIS for providing home infusion services to its members under 'per diem' standards established by the NHIA." Defendant's Brief, ECF No. 28; PageID.346.[7] Defendant then argues that it

_____

[7] For reasons unknown, and to support this statement of "fact," Defendant cites to Agreement §§2.1-2.3, 3.3 and Addendum C. *See* Defendant's Brief, ECF No. 28; PageID.346. For the Court's easy reference, those sections of the

complied with those NHIA standards (where, apparently, the home infusion pharmacies agreed amongst themselves that it's permissible to submit claims to insurance companies without having provided any service), and therefore BCBSM's claims fail under Fed. R. Civ. P. 12(b)(6).

However, as expressly alleged in the FAC, the "parties did not agree to incorporate any standard(s) set by the National Home Infusion Association…, and the Agreement thus makes no mention of same." FAC, ECF No. 16 at ¶11; PageID.129. Accordingly, Defendant's arguments throughout, centered upon a contention that the parties contractually agreed to that which Defendant's own trade association asserts to be proper billing procedures, are completely irrelevant because 1) they contradict the specific allegations of the FAC, which must at this point be accepted as true; and 2) they're manifestly false.[8]

---

Agreement are attached as **Exhibit B**. As glaringly apparent, nowhere in any of the cited sections of the Agreement (or anywhere else) is there any mention of the NHIA, or any agreement to adopt its purported "standards."

[8] As a general rule, courts are not permitted to consider matters outside the pleadings when deciding a Rule 12(b)(6) motion. *Excel Homes, Inc. v. Locricchio*, 7 F. Supp. 3d 706, 710 (E.D. Mich. 2014). And although courts are allowed to take notice of the *existence* of public records, it is well recognized that they may not "consider the statements contained in [those records] for the truth of the matter asserted…at the motion-to-dismiss stage." *See In re Omnicare, Inc. Securities Litig.*, 769 F. 3d 455, 467 (6th Cir. 2014). In other words, when deciding a motion to dismiss, a court may not consider the content of extraneous sources to decide facts that may be reasonably disputed by the parties. *Passa v. City of Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005) ("in general a court may only take judicial notice of a public record whose existence or contents

Defendant also cites and quotes heavily—five full pages worth—from its own website, and various "white papers" plucked from the internet. See Defendant's Brief, ECF No. 28; PageID.344-48. Though unlikely to *ever* be relevant, such recitations of "fact" are certainly not relevant in the context of a Rule 12(b)(6) motion,[9] and will not be further addressed here.

## III.  ARGUMENT

### A.  Legal Standard

A motion brought pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. When deciding a Rule 12(b)(6) motion, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations

---

prove facts whose accuracy cannot reasonably be questioned"). Following these principles, courts have held that materials similar to the NHIA standards were improperly considered on a motion to dismiss. *See Omnicare,* 769 F. 3d 455 at 466-67 (holding that plaintiff's Audit Committee Charter, which was attached to its SEC filing, could not be considered on a Rule 12(b)(6) motion because the contents of the filing could not be taken as true and the mere existence of the Charter had no bearing on whether the plaintiff stated a claim); *Atlas Technologies, LLC v. Levine*, 268 F. Supp. 3d 950, 959 (E.D. Mich. 2017) (holding that LLC Agreement could not be considered on motion to dismiss even though it was "central to the defendants' defenses" because whether the document absolved defendants of liability was irrelevant to whether plaintiff stated claims for relief). Because BCBSM did not agree to incorporate into the Agreement any NHIA standards, and because BCBSM otherwise disputes their content, Defendant's citation to same is wholly inappropriate, and they may not now be considered by the Court.

[9] See, *supra*, n.8; see also *Passa*, 123 Fed. App'x at 698 (holding that the district court improperly considered the defendant's website when granting defendant's motion to dismiss).

as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ*., 413 F. Supp. 3d 687, 693 (E.D. Mich. 2019); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Luis v. Zang*, 833 F.3d 619, 625 (6th Cir. 2016) (reversing and remanding a granted motion to dismiss); quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the question on a motion to dismiss is "not whether the plaintiff will ultimately prevail but whether his complaint is sufficient to cross the federal court's threshold." *InterVarsity*, 413 F. Supp. 3d at 693 (internal citation omitted).

As a general rule, a district court deciding a motion to dismiss should look only to the allegations of the complaint. *Burns v. U.S.*, 542 Fed. App'x 461, 466 (6th Cir. 2013). Nevertheless, a document referred to or attached to the complaint, and integral to plaintiff's claims, may also be considered. *Id*.

**B.    BCBSM Has Stated a Claim for Breach of Contract**

In Count I of the FAC, BCBSM alleges, *inter alia*, that to submit to BCBSM S9328 claims, the Agreement requires: "in addition to dispensing

medication [AIS] must provide ongoing services." FAC, ECF No. 16 at ¶¶38-39; PageID.134. "AIS breached the Agreement by submitting claims to BCBSM using billing code S9328 in instances where AIS provided no ongoing service." *Id*. at ¶40; PageID.135. The Agreement further requires that the S9328 code "is payable only on days when the patient is receiving actual infusion of medications." *Id*. at ¶44; PageID.135. And AIS breached *that* provision "by submitting claims to BCBSM using billing code S9328 on days when patients did not receive actual infusions." *Id*. at ¶45; PageID.136. "Because AIS breached the Agreement, which caused BCBSM wrongfully to pay S9328 claims, BCBSM suffered damages." *Id*. at ¶46; PageID.136.

Those allegations, take as true (as they must) unequivocally state a claim for breach of contract. Defendant does not dispute that. But Defendant argues that BCBSM's breach of contract claim fails "because BCBSA and BCBSMS have publicly admitted that AIS's billing practices fully complied with the Agreement." Defendant's Motion, ECF No. 28; PageID.353.

As stated above, while two parties unrelated to BCBSM may have publicly admitted that AIS's billing practices complied with the provider agreement at issue in the Mississippi Litigation, that fact (which cannot be considered in a 12(b)(6) motion in any event) has zero relevance here. See, *supra*, pp. 9-11.

15

### C. BCBSM Has Stated a Claim for Violation of the Michigan HCFCA

#### 1. BCBSM has alleged more than a mere breach of contract

Under the HCFCA,

> A person who receives a…payment from a…health care insurer which the person knows that he or she is not entitled to…be paid; **or** a person who knowingly presents…a claim which contains a false statement, shall be liable to the…health care insurer for the full amount of the…payment made.

M.C.L. 752.1009 (emphasis added).

Defendant initially argues that BCBSM "cannot base an HCFCA claim on alleged 'contractual violations,'" and cites case law for the proposition that "'a mere breach of contract does not give rise to liability' under the HCFCA." Defendant's Brief, ECF No. 28; PageID.355-56 (citing cases). BCBSM does not quibble with that general statement of the law. But AIS is flat wrong in stating that BCBSM's "HCFCA claim is based entirely on AIS's alleged failure to comply with the Agreement and Provider Manual policies." *Id*. at PageID.356.

BCBSM has alleged far more than mere breaches of the Agreement. The Sixth Circuit has recognized that "[w]hen a [provider's] claim expressly states that it complies with a particular statute, regulation, or contractual term that is a prerequisite for payment, failure to actually comply would render the claim fraudulent." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011);

*Winkler v. BAE Systems, Inc.*, 957 F.Supp.2d 856, 867 (E.D. Mich. 2013) (same)

(quoting *Chesbrough*); *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142

F.3d 296, 304 (6th Cir. 1998) (affirming defendant's violation of False Claim

Act, and rejecting argument as to "mere breach of contract," where defendant

"submitted claims for payment…attesting that the [product] conformed to

contract requirements"); *United States v. Science Applications Int'l Corp.*, 626

F.3d 1257, 1266 (D.C. Cir. 2010) ("In the paradigmatic case, a claim is false

[under the FCA] because it 'involves…a request for reimbursement for goods or

services never provided.'"); *id*. ("a claim for payment is false when it rests on a

false representation of compliance with [a]…contractual term.").[10]

In the FAC, BCBSM identified a representative sample of 55 patients with

regard to whom Defendant submitted to BCBSM several hundred claims under

the billing code S9328.  FAC, ECF No. 16 at ¶¶53-107; PageID.137-45.[11]

> All of the claims referenced in paragraphs 53-107
> contained statements that were wholly or partially untrue
> or deceptive because **AIS knew that it did not actually**
> **perform the procedures, or provide the services**
> required to submit a claim for billing code S9328.
> Likewise, all of the claims referenced in paragraphs 53-
> 107 sought payment from BCBSM that AIS knew it was

---

[10] As Defendant recognizes, because there is limited case law interpreting the
HCFCA, this Court may look to cases interpreting the analogous FCA.  See
Defendant's Brief, ECF No. 28 at n.18; PageID.356.

[11] BCBSM did not identify the patients by name in order to protect their privacy
and to comply with HIPAA.

not entitled to receive because AIS knew that it did not actually perform the procedures, or provide the services required to submit a claim for billing code S9328.

**Moreover, each time AIS submitted a claim for payment under billing code S9328, an AIS representative expressly certified that "the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction."** [12] That certification was material to BCBSM, in that BCBSM would not pay any claim without that certification (and unless that certification was true). **The certification for each claim submitted to BCBSM under billing code S9328 was knowingly false, in that AIS knew that it did not furnish any services to the patient** and, *a fortiori*, that the unperformed services were not medically necessary.

AIS intended that BCBSM rely upon AIS's false claims **and false certification** contained therein, to thereby induce BCBSM to pay the false claims. Stated another way, **AIS knew that BCBSM would not pay any claim without the certification (and unless BCBSM believed it to be true)**. Put simply, BCBSM would not have paid the claims if it knew AIS had not performed the services for which AIS sought payment. In reliance upon the false claims **and false certifications** submitted by AIS, BCBSM paid AIS for those claims, and was thus damaged.

FAC, ECF No. 16 at ¶¶108-114; PageID.145-46 (emphasis added).

Accordingly, BCBSM has alleged that Defendant falsely and knowingly

certified that it had performed a service and complied with the Agreement, when

---

[12] The Agreement requires Defendant to certify, *inter alia*, "that all services billed or reported by [AIS]. . . are performed personally by the healthcare practitioner, or under his/her direct supervision." **Exhibit B**, Agreement, §3.3.

Defendant knew that it had not. Because that false certification is separate and distinct from the breaches of contract, as required by the relevant case law, BCBSM has adequately pled a cause of action under *both* prongs of the HCFCA.[13]

### 2. BCBSM has pled its HCFCA claim with sufficient particularity

Defendant argues that BCBSM failed to "allege any facts meeting the HCFCA statutory elements with particularity, including the 'time, place and content' of the misrepresentations, the defendant's fraudulent scheme and intent, and the resulting injury." Defendant's Brief, ECF No. 28; PageID.357 (citing cases). Defendant then argues that BCBSM "does not allege the 'content' of any purportedly false statement contained in each claim submitted by AIS," and that BCBSM does not provide "any detail on what those statements were and what was false about them." *Id*.

---

[13] Defendant contends that BCBSM "does not allege any plausible factual allegations that AIS received payment it knew it was 'not entitled to receive or be paid,' or 'knowingly' presented a claim containing a 'false statement.'" Defendant's Brief, ECF No. 28; PageID.356. The detailed allegations in the FAC, quoted above, completely refute that contention. Moreover, Defendant is arguing that BCBSM has failed to state a claim because "AIS in fact disputed BCBSM's allegations and asserted that it was entitled to payment under the Agreement." *Id*. at PageID.356-57. The fact that Defendant disputes BCBSM's allegations (here, taken as true), and that Defendant's lawyer wrote an after-the-fact letter so stating, is irrelevant in the context of a 12(b)(6) motion.

On the contrary, BCBSM identified 55 patients, the dates, and the total number of S9328 claims submitted with regard to each patient. FAC, ECF No. 16 at ¶¶53-107; PageID.137-45.[14] And as specifically alleged in the FAC, the "content" of the false statements to BCBSM is the certification that Defendant signed – for **every** S9328 claim for payment – confirming that the "per diem" services were medically necessary, and actually provided. *Id*. at ¶¶108-14; PageID.145-46. Those certifications – every single one of them, and as to every single S9328 claim – were knowingly false because Defendant knew that it never provided *any* additional services to any BCBSM member, and services never provided are obviously not medically necessary. *Id*.

Defendant submitted the knowingly false certifications with the intention that BCBSM rely upon them and pay because Defendant knew that BCBSM would not pay the S9328 claims unless it believed the certifications to be true. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 515 (6th Cir. 2007) ("The fraudulent intent can be inferred from the circumstances…."). BCBSM relied upon the false certifications, paid the claims, and was therefore injured. FAC, ECF No. 16 at ¶¶108-14. Accordingly, BCBSM has pled its HCFCA claim with sufficient particularity.

---

[14] BCBSM awaits entry of an appropriate protective order before identifying these patients by name.

### D. BCBSM Has Stated a Claim for Common Law Fraud

#### 1. BCBSM's breach of contract claim does not preclude BCBSM's fraud claim

Defendant argues that BCBSM's fraud claim fails because BCBSM "must allege AIS violated some duty '*separate and distinct* from its contractual obligations.'" Defendant's Brief, ECF No. 28; PageID.358 (emphasis in original). Defendant further contends that BCBSM "cannot just base its misrepresentation claim 'upon the same conduct giving rise to [AIS's] breach of contract.'" *Id.* In ostensible support, Defendant cites to a 2003 case from the Western District of Michigan (*Convergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647, 660-61 (W.D. Mich. 2003)), and an unpublished case from this Court which followed it (*Randall S. Miller & Associates, P.C. v. Pitney Bowes, Inc.*, 2016 WL 1242356, *4 (E.D. Mich. Mar. 30, 2016)). *Id.*[15]

---

[15] Defendant also cites to *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365; 532 N.W.2d 541, 545-46 (1995). Defendant's Brief, ECF No. 28; PageID.358. But *Huron Tool* was a "defective goods" case under the U.C.C., and was decided pursuant to the economic loss doctrine. 209 Mich. App. at 367-68. Here, BCBSM's claim concerns the provision of *services*, billed to BCBSM under the S9328 code. See FAC, ECF No. 16 at ¶17; PageID.130 ("To qualify for an S code,…[AIS] must provide ongoing services…"). Thus, the economic loss doctrine (and *Huron Tool*) are inapposite. See *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 (6th Cir. 1995) ("The [economic loss] doctrine is associated with 'transactions in goods,' and not with transactions in services.") (internal citations omitted); *Galeana Telecomm. Invest. Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 724 (E.D. Mich. 2016) ("The [economic loss] doctrine only applies to

But in *Galeana*, this Court distinguished tort claims, such as negligence, which require a "duty" as an element of the cause of action, and tort claims (like fraud) that do not. 202 F. Supp. 3d at 722-23. This Court noted that the "separate and distinct duty" analysis has its roots in *Hart v. Ludwig*, 347 Mich. 559; 79 N.W.2d 895 (1956). *Id.* at 723. And rejecting its application to fraud cases, this Court held:

> The *Hart* principle makes sense in the context of a tort claim, like negligence, which is premised on the breach of a legal duty. However, a claim for fraudulent misrepresentations differs in that there is no duty as one of its elements…. Unlike the element of a negligence claim, the elements of a classic fraud claim do not include a legal duty owed or breach of any duty. As such, the *Hart* principle does not apply in this case.

*Galeana*, 202 F. Supp. 3d at 723 (internal citations omitted). Thus, pursuant to a published decision of this Court, BCBSM need not plead a separate and distinct *duty*.

To the extent BCBSM must still allege *conduct* distinct from the breaches of contract, it has done so. As stated above, for each S9328 claim, Defendant signed a knowingly false certification confirming that it had performed the services for which it asked BCBSM to pay. That false certification *is* the alleged distinct conduct, and Defendant's argument thus fails.

---

transactions involving the sale of goods"); *id.* ("Because the Agreement and Amendment at issue here do not involve the sale of goods, the economic loss doctrine is no barrier to [plaintiff's] fraud claims.").

## 2. BCBSM has pled its fraud claim with sufficient particularity

Defendant argues that BCBSM has not alleged with "Rule 9 particularity that AIS knowingly made a false 'material representation,'" or that "AIS made any false representations *knowingly*." Defendant's Brief, ECF No. 28; PageID.359-60 (emphasis in original). For the same reasons stated above with regard to BCBSM's HCFCA claim, and upon a review of BCBSM's actual allegations, Defendant's argument lacks even arguable merit. See FAC, ECF No. 16 at ¶¶53-107; PageID.137-45; *id.* at ¶¶108-14; PageID.145-46; and *id.* at ¶¶119-27; PageID.147-49.

But moreover,

> [t]he requirements of Rule 9(b)...should be interpreted in harmony with Rule 8's statement that a complaint must only provide a short and plain[] statement of the claim made by simple, concise, and direct allegations. Ultimately, the purpose of Rule 9(b) is the same as the purpose of Rule 8—ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense. So, a complaint that pleads enough detail to allow the defendant to prepare a responsive pleading is generally acceptable under Rule 9(b).

*Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 918 (E.D. Mich. 2019) (internal citations and quotation marks omitted).

Here, BCBSM has alleged that every time Defendant submitted to BCBSM for payment an S9328 claim, Defendant committed fraud because

Defendant knew that it had not performed any services for the BCBSM member, but falsely certified that it had. As detailed above, Defendant intended that BCBSM rely upon the false representations because Defendant knew that BCBSM would not pay Defendant unless BCBSM believed the (knowingly false) certifications. BCBSM relied on the veracity of the false certifications and paid Defendant, and was thus injured. That's more than enough detail to allow Defendant to understand the pleaded claim, and prepare its defense. Accordingly, there is no Rule 9 issue here. *Roche*, 427 F. Supp. 3d at 918.

### 3. BCBSM has pled reasonable reliance

Finally, Defendant asserts that BCBSM has also failed to allege "that it reasonably relied on AIS's misrepresentations" because BCBSM "alleges it investigated AIS's representations but continued to pay AIS's claims after it supposedly ferreted out the fraud." Defendant's Brief, ECF No. 28; PageID.360-61. Defendant's contention is again wrong.

As set forth above in Section II. A. (which facts are quoted verbatim from the FAC), BCBSM commenced an investigation in 2019. The "investigation appeared to reveal that despite submitting claims to BCBSM using S9328…, AIS was *not* providing any ongoing services…." After being placed on the PPUR, "AIS failed to provide…evidence supporting…the providing of ongoing services…." BCBSM "*then understood* that AIS was billing and being paid for

services it did not actually perform and, as a result, BCBSM refused to pay AIS's claims under billing code S9328. That is, when BCBSM learned of AIS's fraudulent billing practices with regard to the S9328 claims, BCBSM stopped paying them." See, *supra*, p. 7 (quoting FAC, ECF No. 16 at ¶¶20-27; PageID.131-32) (emphasis added).

Per the allegations in the FAC (taken as true), BCBSM quite clearly does *not* allege that it "continued to pay AIS's claims after [BCBSM]…ferreted out the fraud." Accordingly, Defendant has no basis to argue that BCBSM did not plead reasonable reliance upon Defendant's false certifications.[16]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff BCBSM respectfully requests that this Honorable Court deny Defendant's Amended Motion to Dismiss.

By: /s/ *Scott R. Knapp*

Scott R. Knapp (P61041)
Nolan J. Moody (P77959)
Dickinson Wright PLLC
Attorneys for Plaintiff
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730

Dated:  January 4, 2023

---

[16] Even if Defendant intends to argue that BCBSM learned of the fraud at some point in time before BCBSM stopped paying the S9328 claims, that's a factual question wholly inappropriate for consideration on a Rule 12(b)(6) motion.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2023, Defendant's counsel was served with the foregoing document through the Court's Electronic Filing System.


By: /s/ *Scott R. Knapp*
Scott R. Knapp

4885-6610-1060 v1 [19276-419]