IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLUE CROSS BLUE SHIELD OF MICHIGAN, a nonprofit mutual insurance company,

    Plaintiff,

v.

BOND PHARMACY, INC., D/B/A ADVANCED INFUSION SOLUTIONS, a Mississippi corporation,

    Defendant.

Case No. 2:21-cv-10076

Hon. Denise Page Hood
Hon. Mag. Kimberly G. Altman

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# INTRODUCTION

As Bond Pharmacy, Inc., d/b/a Advanced Infusion Solutions ("AIS"), explained in its opening brief, Blue Cross Blue Shield of Michigan's ("BCBSMI") claims suffer from multiple defects. BCBSMI cannot assert a breach claim under the parties' agreement ("Agreement") because the Blue Cross Blue Shield Association ("BCBSA") and Blue Cross & Blue Shield of Mississippi ("BCBSMS") publicly admitted AIS's billing practices are contractually proper. Its claims under the Michigan Health Care False Claims Act ("HCFCA") and for fraudulent misrepresentation also fail because they are based on alleged contractual breaches, refuted by public admissions, and do not satisfy heightened pleading requirements.

BCBSMI's arguments in opposition are mistaken. BCBSMI seeks to distance itself from the public admissions of related entities with a battery of superheated rhetoric and hyper-technical arguments. But by focusing on whether BCBSA is BCBSMI's "parent" in a corporate organizational chart sense, BCBSMI mischaracterizes AIS's argument and misses the critical point. Whether or not BCBSA is BCBSMI's legal "parent," it is the super-organization for all BCBS entities and functions as a parent. It oversees and directs all BCBS member plans, provides a range of services to the member plans, manages and licenses BCBS intellectual property, and BCBSMS is an affiliate member plan of BCBSMI. All of this is public and cannot be disputed – no matter how strident the rhetoric. And, as

a consequence, BCBSMI cannot maintain its claim when BCBSA and BCBSMS have openly admitted that AIS's billing is contractually proper under an agreement that uses the exact same billing methodology that BCBSMI and AIS agreed on. BCBSMI cannot assert opposite positions on the very same legal issue as it is trying to do here. The Court should not tolerate such blatant gamesmanship.

BCBSMI also has not alleged viable fraud claims. BCBSMI argues its claims are based on AIS's alleged submission of "false certifications." But AIS made the certifications under the Agreement. Thus, any alleged noncompliance amounts to, at worst, a contractual dispute, not fraud or misrepresentation. BCBSMI also fails to specify the false statements for each claim or allege facts showing AIS acted knowingly. Nor can it save its misrepresentation claim by arguing the separate duty rule does not apply. That rule applies to *all* tort claims. And BCBSMI cannot bypass Rule 9's requirements by speculating AIS "understands" its claim.

## ARGUMENT

### I. BCBSA And BCBSMS's Admissions Bar BCBSMI's Breach Claim.

BCBSMI argues that BCBSA is not its corporate "parent" and BCBSMS is not an "affiliate." Opp. at 9. But that makes no difference, and misses the point of AIS's argument. Mot. at 11-14. The fact is that BCBSA is a super-organization that as a practical matter functions as the "parent" or directing entity for all of the BCBS member plans, and BCBSMI and BCBSMS operate as affiliated members of

BCBSA. *Cent. Benefits Mut. Ins. v. BCBSA*, 711 F. Supp. 1423, 1425 (S.D. Ohio 1989). As such, their admissions on the same billing practice, code, and issues here bear directly on whether BCBSMI's breach claim can proceed. *Acheampong v. Bank of N.Y. Mellon*, 2013 WL 173472, at *9 (E.D. Mich. 2013). It cannot.[1] *Id.*

While BCBSMI relies on a barebones affidavit to argue it has no corporate relationship to BCBSA or BCBSMS, public information demonstrates the opposite:

- BCBSMI and BCBSMS are members of BCBSA. They must adhere to BCBSA's "membership standards," pay dues to BCBSA, and place their CEOs on BCBSA's board. *Cent. Benefits Mut. Ins.*, 711 F. Supp. at 1425;

- BCBSA provides services for all member plans, including acting as a "clearing house" for fund transfers, contracting with the federal government on behalf of each member, "suppl[ying] a private telecommunication system" that "links" all members, and providing a "national network" for healthcare products "on behalf of its members," *id.*; and

- BCBSA administers certain disability benefits for BCBSMI, *Ball v. BCBSMI*, 2007 WL 200949, at *1 (W.D. Mich. 2007), and licenses trademarks to and controls member plans through use of the trademarks.[2]

Accordingly, BCBSMI "cannot maintain a breach of contract action" against AIS based on the same billing practice that BCBSA and BCBSMS have publicly admitted is contractually proper. *Acheampong*, 2013 WL 173472, at *9; *Zaher v. Argent Mortg. Co., LLC*, 2017 WL 193550, at *4 (E.D. Mich. 2017). Yet, that is

---

[1] Contrary to BCBSMI's argument, the Court can consider public admissions at the Rule 12 stage. *See Acheampong*, 2013 WL 173472, at *3, 9.

[2] BCBSA, https://www.bcbs.com/about-us/the-blue-cross-blue-shield-system (Feb. 1, 2023). BCBSMI's request for "sanctions" is baseless and improper given the facts supporting AIS's arguments and position. ECF No. 29, PageID381-82.

what it is attempting here. BCBSMI alleges AIS breached the agreement by billing Code S9328 using the per diem model when patients did not receive services or infusions. Am. Cmplt. ¶¶37-46. That is the exact same billing practice and issue that was in dispute in BCBSMS and BCBSA's litigation with AIS. Case No. 3:21CV123 (S.D. Miss. 2021) ("Mississippi Lit."), Dkt. No. 31 at ¶¶17-21; Dkt. No. 106. There, BCBSMS and BCBSA reviewed AIS's Code S9328 claims and determined AIS properly billed under the agreement. Ex. A. BCBSMI cannot assert the opposite position now – that AIS breached the Agreement by using the same billing practice BCBSA and BCBSMS have determined is proper. *Id.*

BCBSMI also argues the admissions relate to a "different" agreement. Opp. at 10. But both agreements use the *same* billing model and code, and BCBSMS and BCBSMI allege they have the same billing requirements. *Compare* Mississippi Lit., Dkt. No. 106 ¶¶16-32 & Ex. 1 (requiring AIS to provide "ongoing services" to bill Code S9328 "per diem"), *with* Opp. at 10-11 (same). Because the admissions show no "basis" exists for BCBSMI's claim, the Court should dismiss it. *Riley v. Commc'ns Workers*, 1987 WL 46347, at *1 (E.D. Mich. 1987).

## II. BCBSMI Cannot Assert An HCFCA Claim Based On Contractual Certifications And Generic Allegations.

**1.** BCBSMI seeks to recharacterize its HCFCA claim as based on contractual "certifications" that AIS made when submitting claims for reimbursement. Opp. at 18. But those certifications are just part of the parties' agreed on claims submission

process, not an independent obligation. Agreement § 3.6. As such, BCBSMI is just trying to replead an alleged "contractual violation" as an HCFCA violation. *Univ. Health Servs., Inc. v. U.S.*, 579 U.S. 176, 195 (2016). That does not work.

The certifications cannot support an HCFCA claim standing alone either. An HCFCA claim based on a "false certification theory" requires a certification that "expressly states that it complies with a particular statute, regulation, or contractual term that is a prerequisite for payment." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). But the alleged certifications do not mention the HCFCA or Agreement as a prerequisite for payment. Am. Cmplt. ¶110; *see Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 300 (6th Cir. 1998).

**2.** Even if BCBSMI's HCFCA claim could proceed, it has not alleged a viable one. BCBSMI argues it has sufficiently alleged AIS acted "knowingly" by alleging "AIS knew" it did not provide services. Am. Cmplt. ¶¶108–09. But that will not do because the HCFCA "strict[ly]" requires BCBSMI to allege facts showing AIS acted knowingly. *Harper v. Muskingum Watershed Conserv. Dist.*, 842 F.3d 430, 438 (6th Cir. 2016). BCBSA and BCBSMS's admissions that AIS's billing did not "constitute fraud" further refute any plausible allegations that AIS acted knowingly.

BCBSMI has also failed to "specify" the false statements in each claim. *Roycroft v. Geo Group, Inc.*, 722 F. App'x 404, 407 (6th Cir. 2018). BCBSMI alleges AIS falsely stated it performed infusions *or* provided services. Am. Cmplt.

¶¶108–09.  But BCBSMI must "specify" the falsehoods, not just "list" potential fraudulent statements.  *Roycroft*, 722 F. App'x at 407.

**III.    BCBSMI Cannot Allege A Viable Misrepresentation Claim.**

**1.**  A plaintiff can only bring a misrepresentation claim if it "would arise independent of the existence of the contract."  *Brock v. Consol. Biomedical Lab'y's*, 817 F.2d 24, 25 (6th Cir. 1987); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 722 (E.D. Mich. 2003).  That is not the case here.[3]

BCBSMI nevertheless argues this rule does not apply because "duty" is not an element of its misrepresentation claim.  Opp. at 21.  But the rule applies to *all* tort claims, as BCBSMI recognized in *Grand Traverse Band of Ottawa & Chippewa Indians v. BCBSM*, 2017 WL 3116262, at *8 (E.D. Mich. 2017); *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015–16 (6th Cir. 1987).  BCBSMI thus cannot assert a misrepresentation claim based on AIS's alleged contractual breaches.

**2.**  Even if BCBSMI's misrepresentation claim could proceed, it does not seriously dispute that it has not alleged its claim with sufficient particularity.  Instead, BCBSMI argues that it alleged enough facts for AIS "to understand" its claim.  Opp. at 24.  But Rule 9 is "undoubtedly more demanding" than that.  *Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008).  BCBSMI must allege

---

[3] BCBSMI relies on *Galeana Telecomm. Invs., Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711 (E.D. Mich. 2016), but it is an outlier decision that goes against the weight of authority.  *Brock*, 817 F.2d at 25; *QQC, Inc.*, 258 F. Supp. 2d at 722.

AIS knowingly made a false "material representation" with the intent BCBSMI would act on it, BCBSMI reasonably relied on that misrepresentation, and it suffered a resulting injury, as well as "specify" the fraudulent statements. *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 801-03 (E.D. Mich. 2012). But it has critically failed to "describe [the] specific" fraudulent statements in each claim. *Randall S. Miller & Assocs. v. Pitney Bowes, Inc.*, 2016 WL 1242356, at *7 (E.D. Mich. 2016). Nor has it plausibly alleged AIS acted *knowingly*, *see id.*, which it cannot do based on BCBSA and BCBSMS's admissions. ECF No. 28-1.

While BCBSMI also argues it reasonably relied on AIS's representations because it did not "confirm" AIS's alleged fraud until after putting AIS on pre-payment review, it alleges it "uncovered" AIS's fraud *months* earlier. Am. Cmplt. ¶¶20–23. BCBSMI cannot plausibly allege it had "full knowledge" of AIS's alleged fraud yet continued to rely on its purported misrepresentations. *Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512, 516 (6th Cir. 2015).

## CONCLUSION

The Court should grant AIS's motion.

Date: February 1, 2023

By: /s/ I.W. Winsten

| | |
|---|---|
| I.W. Winsten (P30528) | Paul Werner |
| HONIGMAN LLP | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 660 Woodward, Ste. 2290 | 2099 Pennsylvania Avenue, N.W., Suite 100 |
| Detroit, MI 48226 | Washington, DC 20006 |
| (313) 465-7608 | (202) 747-1931 |

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, Plaintiff's counsel was served with the foregoing document through the Court's Electronic Case Filing System.

By: /s/ I. W. Winsten
I. W. Winsten

46814530.1