UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD OF MICHIGAN,

       Plaintiff,                              Case No. 21-10076

v.                                        Hon. Denise Page Hood

BOND PHARMACY, INC. d/b/a
ADVANCED INFUSION SOLUTIONS,

       Defendant.
_____/

**ORDER DENYING AMENDED MOTION TO DISMISS (ECF No. 28)**

**I.    BACKGROUND**

On January 11, 2021, Plaintiff Blue Cross Blue Shield of Michigan (BCBSM) filed the instant Complaint against Defendant Bond Pharmacy, Inc. d/b/a Advanced Infusion Solutions (AIS), amended on March 25, 2021, alleging: Breach of Contract (Count I); Violation of the Michigan Health Care False Claims Act, M.C.L. 752.1009 (Count II); and, Fraudulent Misrepresentation (Count III).  (ECF Nos. 1, 16)

BCBSM is an independent licensee of Blue Cross Blue Shield Association located in Detroit, Michigan.  BCBSM is a nonprofit organization that provides and administers health benefits to more than 4.3 million members residing in Michigan in addition to members of Michigan-headquartered groups who reside outside the state. AIS is a home infusion therapy provider for intrathecal pain management (i.e., pain

management provided through pharmaceuticals administered into the spine). AIS provides pharmaceuticals, nursing visits, durable medical equipment, medical supplies, and other solutions to patients that need home infusion therapy. (ECF No. 16, PageID.128)

On April 1, 2018, AIS and BCBSM entered into the Home Infusion Therapy Facility Participation Agreement ("HITFPA"). HITFPA incorporates by reference BCBSM's Provider Manual and its Medical Policy (the HITFPA, Provider Manual, and Medical Policy are, together, the "Agreement"). *Id.*, HITFPA at ¶ 1.1. The Agreement stated it "constitutes the entire Agreement between the parties and supersedes any and all prior agreements or representations oral or written as to matters contained herein, and supersedes any agreements between Provider and BCBSM which conflict with the terms and conditions of this Agreement." *Id.* at PageID.128-.129, HITFPA at ¶ 6.10. The Agreement provides no provision regarding any standard(s) set by the National Home Infusion Association ("NHIA"). *Id.* at PageID.129.

The Agreement provided that BCBSM pay AIS, for three components of home infusion therapy services that AIS may provide to BCBSM's Members ("Covered Services"): (1) pharmaceuticals; (2) durable medical equipment, supplies, and solutions; and (3) nursing visits. *Id.*, HITFPA at Addendum C. When a BCBSM

2

Member receives a Covered Service from AIS, AIS submits a claim to BCBSM for that Covered Service and, in turn, BCBSM pays AIS directly for Covered Services except for Copayment and Deductibles that are the responsibility of the Member. *Id.,* HITFPA at ¶ 2.1.

At issue in this lawsuit is AIS's claim submissions to BCBSM for payment for durable medical equipment, supplies, and solutions (the second component of Covered Services under Addendum C to the Agreement). The Medical Policy Procedure Code Nomenclature provides that billing code S9328 with regard to Home Infusion Therapy ("HIT") is used for "[HIT], implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment, (drugs and nursing visits coded separately), per diem." AIS must submit claims to BCBSM using billing code S9328. *Id.* at PageID.129-.130. The Provider Manual states that "[t]o qualify for an S code, in addition to dispensing medication [AIS] must provide ongoing services, such as: Medical supervision, [n]ursing, [p]atient or caregiver training, [and] [p]atient support." *Id.* at PageID.130, Provider Manual at 13 (Home Infusion Therapy Services at "HIT services"). The Provider Manual also outlines billing requirements for all HIT services, and states that AIS must obtain a signed and dated certificate of medical necessity ("CMN") "for each therapy category provided." *Id.,* Provider Manual at

17-19 (Documentation requirements for clinical records). The CMN must include all of the following information:

- Prescribing physician's name, address and telephone number
- Patient's full name, address, gender and birth date
- Detailed diagnosis related to the infusion therapy using standard billing guidelines
- Description of the patient's condition, detailed enough to substantiate the necessity of services or items
- Dosage, infusion time, fluids, frequency, and duration (start and stop dates [MM/DD/YY] of medication)
- Type or route of infusion administration, required equipment and supplies
- Estimated date of duration of need and frequency of use
- Nursing orders
- Physician's signature and date [*Id.*]

*Id*. at PageID.130-.131.

In 2019, BCBSM initiated an investigation into AIS's use of the S9328 billing code after receiving complaints about AIS's billing practices. That investigation uncovered that AIS was using S9328 to submit claims to BCBSM in instances where AIS was selling the HIT pharmaceutical component to providers in Michigan (and submitting claims to BCBSM for that pharmaceutical component). The Michigan providers, not AIS, were overseeing administration of the drug and the patient's care. AIS was not providing ongoing services such as medical supervision, nursing, patient or caregiver training, or patient support for the S9328 claims. *Id*. at PageID.131-.132.

4

On December 19, 2019, BCBSM placed AIS on a Pre-payment Utilization Review ("PPUR"), wherein BCBSM required that for every claim submitted by AIS, it needed to provide documentation to substantiate that claim. BCBSM claims AIS failed to substantiate any of the claims that it submitted to BCBSM for billing code S9328 under the PPUR. Specifically, BCBSM claims AIS failed to provide a CMN or other evidence supporting the dispensing of mediation or the providing of ongoing services such as patient care coordination, pharmacy consulting, or supplies. BCBSM asserts that AIS provided to BCBSM only the medication prescriptions that it mailed to the overseeing provider, which is insufficient pursuant to the plain terms of the Agreement. Because BCBSM believed that AIS was billing for services it did not actually perform, BCBSM refused to pay the claims that AIS failed to substantiate under billing code S9328. AIS responded in an October 16, 2020 letter to BCBSM's request for evidence of medical necessity relative to AIS's claims using S9328, AIS stated that "BCBSM [was] request[ing] documentation that it knows AIS cannot provide." *Id.* at PageID.132-.133.

When submitting claims for HIT services, BCBSM claims AIS must also "[e]nter the total number of days the patient infused for the therapy" because "S Codes are quantity-processed or quantity-paid," and that BCBSM "pays them as many times as [AIS] indicate[s] they were performed ...." Provider Manual at 13-14 (Home

5

Infusion Therapy Services at "HIT services"). The Manual further provides that, "the per-diem [S9328] is payable only on days when the patient is receiving actual infusion of medications through intravenous or other authorized drug delivery routes of home infusion therapies." HITFPA at Addendum C. BCBSM alleges that AIS submitted claims to BCBSM for billing code S9328 on days when a patient did not receive an actual infusion of medications through intravenous or other authorized drug delivery routes of home infusion therapies. AIS responded in its October 16, 2020 correspondence to BCBSM that it was submitting claims to BCBSM for more than just the days that its patients were receiving actual infusions of medications: "AIS charges a per diem for each day a given patient is provided access to a prescribed therapy, beginning with the day the therapy is initiated and ending with the day the therapy is discontinued. So long as additional infusions are anticipated in the near future as prescribed in the physician plan of care, a patient need not receive a drug infusion each and every day for an existing per diem to apply." *Id*. at PageID.133-.134.

BCBSM asserts it has paid AIS $6,406,792.13 for claims that AIS submitted with code S9328. The Agreement was terminated by BCBSM by letter dated January 6, 2020. *Id*. at PageID.134.

This matter is before the Court on AIS's Amended Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 28) A response and reply have been filed. (ECF Nos. 32, 34) A hearing was held on the matter.

## II. ANALYSIS

### A. Motion to Dismiss Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar*

*Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B.     Breach of Contract (Count I) Settlement/Admission

In this Amended Motion to Dismiss, AIS adds the argument that AIS resolved, in a related litigation with Blue Cross Blue Shield Association (BCBSA), the parent entity of BCBSM, and Blue Cross Blue Shield of Mississippi (BCBSMS), the issue regarding billing under S9328. *See* Civil Action No. 3:21-cv-123-KJH-MTP (Mississippi Litigation). In that litigation, AIS asserts that BCBSMS alleged the same claims in the instant lawsuit by BCBSM that AIS breached the parties' agreement and fraudulently billed claims under Code S9328 by billing under the "per diem" reimbursement model. AIS claims that in resolving the Mississippi Litigation, BCBSMS and BCBSA, publicly admitted that AIS's per diem billing fully complied with the parties' agreement and "did not constitute fraud." (ECF No. 28, PageID.365, Ex. A) The Settlement Statement stated:

> Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("BCBSMS") and the Blue Cross Blue Shield Association ("BCBSA") have evaluated the billings by Bond Pharmacy dba AIS Healthcare ("AIS") that included per diems, and have now concluded, after further evaluation that all of AIS' bills to BCBSMS, including without

8

>limitation AIS' bills using HCPCS Code S9238 for per diems, did not constitute fraud, and made no finding of waste or abuse.
>
>AIS, BCBSMS, BCBSA, and Advanced Health Systems, Inc. ("AHS") have settled all disputes arising out of, relating to, or concerning the claims and issues asserted by the parties to the legal proceedings in the lawsuit known as Bond Pharmacy d/b/a Advanced Infusion Solutions v. Advanced Health Systems, Inc. and Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company, United States District Court for the Southern District of Mississippi, Civil Action No. 3:21-cv-123-KJH-MTP. The settlement includes an arm's length negotiated resolution on mutually acceptable terms by which a confidential amount will be paid to AIS for past services.

*Id.* AIS argues that in light of these admissions, BCBSM's lawsuit should be dismissed because there is no basis for BCBSM's claim that AIS has breached the Agreement. AIS claims the same exact billing practices were admitted by BCBSM's parent entity as proper.

In response, BCBSM asserts that BCBSA is not BCBSM's parent, and BCBSM is not affiliated with BCBSMS. Ms. Irick declares that BCBSM is a non profit mutual insurance company, without shareholders and has no parent company. ECF No. 32, PageID.429, Declaration of Liz Irick.

BCBSM further asserts that AIS's Amended Motion went beyond the four corners of the Amended Complaint by submitting the alleged Settlement Agreement with BCBSA and BCBSMS. And to rebut such, BCBSM submitted Ms. Irick's Declaration.

9

As Rule 12(b)(6) states, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Although the Court is able to consider public records in reviewing such a motion, AIS's submission of a separate litigation cannot support its Motion to Dismiss because the Court and the parties would have to delve into the allegations, defenses, agreements, contracts and any discovery produced in that case in order to determine whether the parties and allegations are related. There is nothing in the Amended Complaint filed by BCBSM in this Court that indicates BCBSM is affiliated, is a subsidiary or has any other relationship with any other entities. The Court will not, at this stage of the litigation, determine whether BCBSM is a subsidiary, or has any relationship with BCBSA or BCBSMS, the parties in the Mississippi litigation. Discovery is required to determine the BCBSM's relationship with those parties, and, whether the agreements in this action and in the Mississippi litigation are the same or related. The Court denies, without prejudice, AIS's Amended Motion to Dismiss that BCBSM's breach of contract claim cannot survive because of the settlement in the Mississippi litigation.

### C. Violation of Michigan's HCFCA (Count II)

AIS argues that BCBSM's statutory claim suffers multiple fatal defects because it cannot base its HCFCA claim on alleged contractual violations, citing *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2004 (2016) and *Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 434 (6th Cir. 2016) ("[I]t is well settled that a mere breach of contract does not give rise to liability" under the HCFCA.); *see also Winkler v. BAE Systems, Inc.*, 957 F. Supp. 2d 856, 869 (E.D. Mich. 2013). AIS further argues that BCBSM's statutory claim is undermined by the admissions of its parent and affiliate as AIS argued above, which the Court declines to so find at this stage of the litigation. AIS also argues that BCBSM allege no facts to meet the statutory elements with particularity, including the time, place and content of the misrepresentations.

In response, BCBSM argues that it has identified claims which it alleges are false under the HCFCA, not just a general contractual violation claim, citing, among others, *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998) (affirming defendant's violation of False Claim Act, and rejecting argument as to "mere breach of contract," where defendant "submitted claims for payment...attesting that the [product] conformed to contract requirements"). BCBSM asserts that it identified the contractual terms violated and the hundred of claims under

11

billing code S9328 which AIS did not actually perform the procedures or provide the services required.

To state a claim under the HCFCA, a plaintiff insurer must allege (1) the defendant received payment and (2) the defendant knew it was "not entitled to receive or be paid," or "knowingly" presented a claim containing a "false statement," which the statute defines as "wholly or partially untrue or deceptive." M.C.L. 752.1002(c) & 752.1009.19.

A review of the Amended Complaint shows that BCBSM alleged more than mere breaches of the Agreement under the HCFCA. BCBSM identified 55 patients, the dates, and total number of S9328 claims submitted with regard to each patient. ECF No. 16, PageID.137-145. The "content" of the false statements to BCBSM is the certification that AIS signed for every S9328 claim for payment – confirming that the "per diem" services were medically necessary, and actually provided. *Id*. BCBSM alleges that AIS knew that it never provided any additional services to BCBSM members. *Id*. BCBSM further alleges that AIS submitted the documents with the intention that BCBSM rely upon them and pay because Defendant knew that BCBSM would not pay the S9328 claims unless it believed the certifications to be true. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 515 (6th Cir. 2007) ("The fraudulent intent can be inferred from the circumstances. . .").

The Court finds that BCBSM has adequately pled a cause of action under the HCFCA by identifying patients, the dates and total number of claims submitted under billing code S9328, alleging there were no proof that these were medically necessary or that such services were actually provided by AIS. AIS's Amended Motion to Dismiss on Count II-Violation of the HCFCA is denied.

### D. Fraudulent Misrepresentation (Count III)

AIS argues that BCBSM's misrepresentation claim fails for multiple reasons. AIS claims that BCBSM cannot convert its breach of contract claim into a fraudulent Misrepresentation claim because the claim sound in tort. AIS asserts that BCBSM must allege that AIS violated a duty separate and distinct from its contractual obligations. AIS again argues that BCBSM's fraud claim cannot proceed in light of BCBSA and BCBSMS's settlement and admissions in the Mississippi litigation, which as noted above, the Court will not so find at this time. AIS also argues that BCBSM failed to meet Rule 9 of the Rules of Civil Procedure's requirement to plead with particularity that AIS knowingly made a false material Misrepresentation, citing, *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 662–63 (6th Cir. 2013) and *Novak v. Nationwide Mut. Ins.*, 599 N.W.2d 546, 553– 54 (Mich App. 1999).

BCBSM responds that it has alleged conduct distinct from the breaches of contract by alleging that AIS knowingly signed false certification for each S9328 claim because it had not performed the services. The false certification is the alleged distinct conduct BCBSM alleges AIS did. BCBSM further responds that it has met Rule 9's particularity requirement. BCBSM argues that the requirements of Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide a short and plain statement of the claim made by simple, concise, and direct allegations. Ultimately, BCBSM claims the purpose of Rule 9(b) is the same as the purpose of Rule 8—ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense. BCBSM further argues that a complaint that pleads enough detail to allow the defendant to prepare a responsive pleading is generally acceptable under Rule 9(b), citing *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 918 (E.D. Mich. 2019).

The Sixth Circuit has interpreted Rule 9(b) as requiring a plaintiff to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See, Yuhasz v. Brush Welman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003).

BCBSM in the Amended Complaint alleged that every time AIS submitted an S9328 claim to BCBSM for payment it committed fraud. Specifically, BCBSM alleges,

> 119. Beginning April 1, 2018, AIS knowingly, or with a reckless disregard for the truth, made numerous false representations to BCBSM.
>
> 120. By submitting claims to BCBSM using billing code S9328, and as to each of those 618 claims concerning Patients 1 through 55 (see paragraphs 53–107), AIS represented to BCBSM, among other things, that AIS had: (1) provided Patients 1 through 55 with ongoing services such as medical supervision, nursing, patient or caregiver training, or patient support; (2) obtained a signed and dated CMN for each therapy category provided; and (3) only submitted claims to BCBSM for days when Patients 1 through 55 received actual infusions of medications through intravenous or other authorized drug delivery routes of home infusion therapies.
>
> 121. Indeed, as stated above, when submitting those S9328 claims to BCBSM, AIS expressly certified that the services for which AIS sought payment were both medically necessary and actually provided by AIS.
>
> 122. These representations/certifications were material to BCBSM, as BCBSM would not pay any claim without those representations/certifications (and unless they were true).
>
> 123. In actuality, for each of the submitted claims for Patients 1 through 55, AIS did not: (1) provide ongoing services such as medical supervision, nursing, patient or caregiver training, or patient support; (2) obtain a signed and dated CMN for each therapy category provided; and (3) only submit claims to BCBSM for days when Patients 1 through 55 received actual infusions of medications through intravenous or other authorized drug delivery routes of home infusion therapies.
>
> 124. When AIS made the aforementioned representations/certifications to BCBSM, AIS knew those representations/certifications were false, or recklessly disregarded their falsity.
>
> 125. That is, AIS knew that it did not provide any ongoing services to those patients; it knew that it did not have a signed CMN; it knew that it submitted claims to BCBSM for days when the patients did not receive

15

actual infusions of medications; and it knew that the unperformed services were not medically necessary.

126. Because AIS knew that BCBSM would not pay any claim without AIS's representations/certifications (and unless BCBSM believed them to be true), AIS made the aforementioned representations/certifications with the intention of inducing BCBSM to rely on them, and pay the claims.

127. BCBSM acted in reliance upon AIS's false representations/certifications, and suffered resulting injury, by paying AIS for claims for the purported (but unperformed) medical services that correspond to the use of billing code S9328.

ECF No. 16, PageID.147-.149.

Based on a review of the Amended Complaint, BCBSM has, with particularity, alleged the time, place, and content of the alleged misrepresentation on which BCBSM relied, the fraudulent scheme and intent of AIS, and the injury resulted from the alleged fraud–that AIS failed to repay BCBSM the amount it owed.  As detailed in the Amended Complaint, AIS intended that BCBSM rely upon the false representations because AIS knew that BCBSM would not pay Defendant unless BCBSM believed the (knowingly false) certifications.  BCBSM has plausibly alleged that a fraudulent misrepresentation claim against AIS in Count III.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant AIS's Amended Motion to Dismiss (ECF No. 28) is DENIED.

                                                 <u>S/DENISE PAGE HOOD</u>
                                                 DENISE PAGE HOOD
                                                 United States District Judge

DATED: March 29, 2024