# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

| | |
|---|---|
| **BLUE CROSS BLUE SHIELD OF MICHIGAN**, a nonprofit mutual insurance company,<br><br>        Plaintiff-Counter Defendant,<br><br>v.<br><br>**BOND PHARMACY, INC., D/B/A ADVANCED INFUSION SOLUTIONS**, a Mississippi corporation,<br><br>        Defendant-Counterclaimant. | Case No.: 2:21CV10076<br><br>**District Judge Denise Page Hood**<br><br>**Magistrate Judge Kimberly G. Altman** |

## AGREED DISCOVERY PROTOCOL

Plaintiff/Counter-Defendant Blue Cross Blue Shield of Michigan ("BCBSM") and Defendant/Counter-Plaintiff Bond Pharmacy, Inc. d/b/a Advanced Infusion Solutions ("AIS") (collectively, the "Parties") enter into this Agreed Discovery Protocol (the "Protocol") to address: (i) technical specifications governing electronic discovery and hard copy documents and (ii) electronic discovery protocols for searching for electronic data responsive to the Parties' discovery requests.

I. **TECHNICAL SPECIFICATIONS**

IT IS HEREBY AGREED, by and between the Parties that the following technical specifications shall govern electronic discovery and hard copy documents in this matter:

A. **E-mails**

1. The Parties shall produce e-mails to each other as single-page TIFF images with document-level extracted text (.txt), Opticon (.opt) and Relativity (.dat) load files.

2. Load files shall contain the fields listed in Exhibit A, to the extent they are available.

3. The producing party shall preserve all e-mail files in native format with all metadata intact and shall produce the metadata for any e-mails reasonably requested by the other party.

4. If a document does not contain extractable text, the producing party shall provide OCR for that document.

5. E-mail attachments shall be handled according to the provisions of Subsection B, below, applicable to other electronic documents. The Parties shall preserve "parent/child" relationships between e-mails and attachments. Not responsive attachments may be withheld. If an attachment is withheld as non-responsive, the producing party shall produce a slip-sheet so stating. If any one attachment to an email is responsive, then the cover email shall be produced for context, regardless of the cover email's responsiveness.

6. **Email Thread Analysis.** Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

B. **Other Electronic Documents**

1. Except as provided in paragraphs B(5) and B(6) below, the Parties shall produce Word and other electronic documents as single-page TIFF images with accompanying document-level extracted text (.txt), Opticon (.opt) and Relativity (.dat) load files.

2. **Load Files.** Load files shall include the fields listed in Exhibit A, to the extent they are available.

3. **Embedded Files**. Embedded files, except for images embedded in emails, are to be produced as family groups whenever possible. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

4. **Metadata for Redacted Documents**. For any document that is redacted, the producing party shall withhold any metadata that is the subject of the redaction, and provide OCR for the produced image as redacted.

5. **Excel Files**. All Excel files and other spreadsheets shall be produced in native format unless they are easily readable in a non-native format as set forth herein. Notwithstanding this, the Parties understand that producing native files may effect some changes in metadata. Metadata for name and creation dates shall be preserved when producing native files whenever possible.

6. **Native Format**. Parties shall produce agreed-upon ESI in native format (such as spreadsheets, audio, video, and XML files). Spreadsheets shall be produced in their native electronic format and should contain the Bates number of the file in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality

designation. Wherever feasible, the producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production. Additionally, if after reviewing production of other ESI in a non-native format, a receiving party believes that it is necessary to review a certain document or documents in native format, the Parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

7. **Native Redactions.** In the event that the producing party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

8. **Databases**. Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software. If the Producing Party objects to such form, the Parties shall undertake reasonable efforts, and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces Microsoft Access or other database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

9. **No Backup Restoration Required.** No Party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, legacy or discontinued computer systems that are no longer in use, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case, unless otherwise ordered by the Court.

10. **No Obligation to Convert Third Party Productions**. The Parties agree that any document production received from a third party shall be produced in the format in which it was received, except a party may provide Bates labels and a confidentiality designation if appropriate.

11. **Method of Production**. The Parties agree that documents may be produced via secure file transfer or encrypted media.

12. **Time Zones.** The Parties will use universal coordinated time (UTC) zone for processing.

13. **Tiffing Settings**. Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

14. **Usual Course of Business**. Documents produced pursuant to this order shall be deemed to have been produced in the usual course of business.

15. **Preservation of Native Files**. The producing party shall preserve all native electronic document files with all metadata intact and shall produce such native files and metadata (with the exception of native files for documents that have been redacted, in which case the Parties shall confer in good faith to determine the method by which the native file will be produced) for any documents or sets of documents reasonably requested by the other party.

16. **Duplicates**. The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated across all sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, and the hash values of all attachments. The names of all custodians and non- custodial sources who were in possession of a document prior to deduplication will be populated in the All Custodians metadata field.

C. **Hard Copy Documents**

1. The Parties shall produce hard copy documents as single-page TIFF images with accompanying document-level OCR text (.txt), Opticon (.opt) and Relativity (.dat) load files.

2. Load files shall include the fields listed in <u>Exhibit A</u>, to the extent they are available.

3. The Parties recognize that a significant amount of the metadata ordinarily reflected in the load file fields for electronic documents will not be available for hard copy documents. To the extent possible, the Parties will apply unitization practices consistent with the following description. Each page of a hard copy document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments shall be maintained, as it existed in the original document when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. ESI must be processed in such a manner so as to preserve the original unitization of the document and any affiliated documents. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Where possible, such information shall be provided in the required load files produced, but the Parties are not obligated to create metadata for hard-copy documents.

4. The Parties may withhold from production hard copy documents

which are exact and identical duplicates of documents produced electronically provided that any such hard copy which contains notations, handwritten or otherwise, not included on the electronically produced document, shall not be considered as an exact and identical duplicate. Any party may request information regarding the particular electronic means of determining exact and identical duplicates from any other and such information shall be provided within a reasonable time. The Parties shall maintain the originals of any non-produced hard copy.

### D. TIFF Images Generally

1. Except as specified below, TIFF images produced by the Parties shall consist of:

    a) single-page, black and white, 300 dpi Group IV TIFF images, one image per page, named after the Bates number with extension ".tif" with an Option (.opt) load file; and

    b) text files, one file per document (document level text files), containing text extracted from the native file or OCR for redacted documents or hard copies, named after the starting Bates number of the document, with extension ".txt".

2. The Parties shall provide metadata in a Relativity-format delimited file with the following delimiters:

- *Record delimiter:* Windows newline/Hard return (ASCII character 174)

- *Field delimiter:*  ¶ (ASCII 20)

- *Multi-value delimiter:* Semicolon ; (ASCII 59)

- *Text qualifier:*  Small thorn þ (ASCII 254)

    E.    **"Confidential" or Attorneys' Eyes Only Material**

If a Party designates a document it is producing as "Confidential" or "Attorneys' Eyes Only," as allowed by the Parties' Stipulated Protective Order, the .dat/.dii file accompanying the production of the document shall include a field indicating this designation for each such document.

**II.    ELECTRONIC DISCOVERY SEARCH PROTOCOL**

The following protocol shall apply to the Parties' searches for electronic data responsive to the Parties' discovery requests, to the extent such electronic data has not already been produced.

    A.    **Custodians and Search Terms**

1.    For email electronic data, the Parties shall negotiate custodians and search parameters in good faith as follows: The Parties shall exchange a list of email-ESI custodians and search parameters for their own productions by an agreed-upon date. Thereafter, each Party shall have the opportunity to propose additional names or job categories (if particular names are not known) for the other party's production. Thereafter, the Parties will negotiate in good faith to attempt to

reach an agreement as to custodians and search parameters. To the extent the Parties cannot agree on all custodians and search terms, both Parties reserve the right to seek relief from the Court. The Parties reserve their rights with respect to the email-ESI custodians and search parameters, including to identify additional custodians and search parameters. Furthermore, the Parties reserve their rights to bring any issues to the Court for resolution.

2. For documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images or hard copy documents, the Parties agree that an attorney-guided self-selection is a reasonable search rather than using search terms, predictive coding, or other technologies that rely primarily on text. The Parties agree to negotiate in good faith to resolve any disagreements regarding the search for, review of, and production of such documents.

3. The Parties agree that an attorney guided self-selection is a reasonable search for non-email, electronic data of current employees.

**B.** **<u>Objections</u>**: Nothing in this Protocol shall be construed as requiring production of any document or information the production of which has been objected to absent an order from the Court compelling production.

**C.** **<u>Protective Order</u>**: Documents and data produced pursuant to this Protocol are subject to the Stipulated Protective Order entered in this matter,

including specifically the clawback provisions provided for therein.

        D.    **Search Not Exclusionary**: This Protocol is intended to gather responsive documents. It is not intended to exclude responsive documents. If the Parties identify documents that are responsive to a discovery request, such party has an obligation to produce those documents, even if they are not captured using the proposed search protocol.

## III.   COSTS

The Parties agree that they shall each bear their own reasonable and ordinary costs incurred in connection with the preservation and production of reasonably accessible electronically stored information. However, nothing in this Protocol shall affect the right of any Party to seek reimbursement for costs incurred in connection with the preservation and production of electronically stored information that is not reasonably accessible, or the right to seek an award of fees or costs that may otherwise be available pursuant to contract, law or court order.

## IV.   PRIVILEGE LOGS

The Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the methods identified herein.

        A.    **Automated Log**. An automated privilege log will be generated from

the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

  a. SUBJECT
  b. FILE NAME
  c. AUTHOR
  d. SENDER/FROM
  e. RECIPIENTS/TO
  f. CC
  g. BCC
  h. SENT DATE TIME
  i. RECEIVED DATE TIME
  j. FILE CREATED DATE TIME
  k. FILE LAST MODIFIED DATE TIME
  l. PRIVILEGE TYPE
  m. BEG PRIVBATES
  n. END PRIVBATES

With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. Should the receiving party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within five business days of the request, or within such other reasonable time as the Parties may agree or the Court may order. If after receipt of the description the receiving party believes that any document withheld is not, in fact, privileged, it may take appropriate action with the Court.

**B.** **Standard Log**. Any party may also prepare a standard privilege log, which will include these fields: author/sender/from; recipients/to; cc; bcc; date; privilege type; and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Should the receiving party in good faith have reason to believe a particular entry on the Standard Log does not reflect a privileged document, it may request a further description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within five business days of the request, or within such other reasonable time as the Parties may agree or the Court may order. If after receipt of the description the receiving party believes that any document withheld is not, in fact, privileged, it may take appropriate action with the Court.

**C.** **Post-Lawsuit Documents**. Documents dated after the filing of the lawsuit containing privileged and/or work product material relating to the lawsuit do not need to be logged.

**Approved as to form and substance.**

                                        */s/_Scott R. Knapp (signed with permission)___*
                                        Scott R. Knapp (P61041)
                                        Nolan J. Moody (P77959)
                                        Maureen J. Moody (P85032)
                                        DICKINSON WRIGHT PLLC

123 W. Allegan Street, Suite 900
Lansing, MI 48933-1739
(517) 371-1730
sknapp@dickinsonwright.com
nmoody@dickinsonwright.com
mmoody@dickinsonwright.com

*Attorneys for Plaintiff-Counter Defendant*

*/s/ Jonathon A. Rabin*
Jonathon A. Rabin
Larry R. Jensen
Hall, Render, Killian, Heath & Lyman, P.C.
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
Telephone: (218) 457-7850
JRabin@hallrender.com
ljensen@hallrender.com

Paul Werner
Imad Matini
Hannah Wigger
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
*Attorneys for Defendant*
2099 Pennsylvania Ave. NW, Ste. 100
Washington, D.C. 20006
(202) 747-1931
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
hwigger@sheppardmullin.com

*Attorneys for Defendant-Counterclaimant*

# **EXHIBIT A**

| Field | Description | Sample Data |
|---|---|---|
| **Bates Begin** | Bates number of the first page in the document. | ABC00000001 |
| **Bates End** | Bates number of the last page in the document. | ABC00000015 |
| **Family Begin** | Bates number of the first page in the document family. | ABC00000001 |
| **Family End** | Bates number of the last page in the document family. | ABC00000030 |
| **Page Count** | Number of pages produced. | 15 |
| **Custodian** | The name of the custodian of this document. | Doe, John |
| **All Custodians** | When documents have been globally deduplicated, the names of the other custodians who also possessed the document. | Smith, Mary; Jones, William; Brown, Jane |
| **From** | Author of the e-mail | Doe, John <jdoe@company.com> |
| **To** | Recipient(s) of the e-mail | Smith, Mary <msmith@company.com>; Jones, Williams <jwilliams@company.com> |
| **CC** | Copyees of the e-mail | Brown, Jane <jbrown@company.com> |
| **BCC** | Blind Copyees of the e-mail | Doe, John <jdoe@company.com> |
| **E-Mail Subject** | Subject of the e-mail message | RE: Our Project |
| **File Name** | Original file name of the document; may contain the subject of the e-mail for e-mails | RE Our Project.msg MyAttachment.xlsx |
| **File Extension** | Original file extension of the document when it was collected | Msg |
| **Author** | Value of the author field in the native file | Doe, John |
| **Date Sent** | Date e-mail was sent | 12/31/2013 |
| **Time Sent** | Time e-mail was sent | 14:54:27 |
| **Date Received** | Date e-mail was received | 12/31/2013 |
| **Time Received** | Time e-mail was received | 14:54:29 |
| **Date Created** | Date document was created | 12/30/2013 |
| **Time Created** | Time document was created | 18:50:20 |
| **Date Modified** | Date document was last modified | 12/31/2013 |
| **Time Modified** | Time document was last modified | 09:30:15 |

| | | |
|---|---|---|
| **Source Path** | Original path to the folder or directory where the document was stored. | Inbox\MyFolder<br>C:\Users\jdoe\My Documents |
| **Redacted** | States whether the document contains redactions | No |
| **MD5 Hash** | Unique identifier generated using the MD5 cryptographic hash function. | D564668821C34200FF3E32C9BFDCCC80 |
| **Thread Group** | If only inclusive emails are produced, then thread group shall be provided for the families. | A00001e21 |
| **Confidentiality Text** | The confidentiality designation requested for this document. | Highly Confidential |
| **File Native** | Location of the text file, relative to the root of the volume. | TEXT\000001\ABC00000001.TXT |
| **File** | For documents produced natively, a link to the location of the native file, relativity to the root of the volume. | NATIVE\000001\ABC00000015.XLSX |

# EXHIBIT B

The below represents the parties *agreed upon* search terms and custodians for email electronic data. However, nothing in this protocol waives any party's right to seek an order from the Court requiring the other party to utilize additional search terms or custodians, or other search parameters, for both email ESI and non-email ESI.

**TO BE COMPLETED BY THE PARTIES**